## RUSSELL PARKS V. THE STATE.

No. 11150.    Delivered November 16, 1927.

Rehearing denied February 1, 1928.

### 1.—Murder—Impeaching the Defendant—Evidence—Held Proper.

Where appellant had testified as a witness in his own behalf there was no error in permitting the state to prove that he had been prosecuted and acquitted of murder theretofore, there being nothing in the bill to show that the transaction was so remote as to preclude its admissibility.

### 2.—Same—Impeaching Witness—By Showing Specific Acts—Properly Excluded.

There was no error in refusing to permit evidence that the witness Calvert had been guilty of specific acts of illicit relations with women, other than the deceased, for purposes of impeachment.

**3.—Same—Evidence—Of Bloodstains—Properly Admitted.**

There was no error in permitting proof that there was blood in the hallway near the bathroom, where it was shown that deceased fell after being shot.

**4.—Same—Evidence—Hearsay—Properly Excluded.**

Evidence that the keeper of the hotel where the homicide occurred had reprimanded the deceased for visiting the bedroom of appellant, was hearsay, and properly excluded.

**5.—Same—Evidence—Of Personal Appearance of Deceased—Error, but Harmless.**

While evidence of the personal appearance of the deceased was not properly admitted, its admission would not warrant the reversal of the case.

**6.—Same—Bill of Exception—Incomplete—Presents No Error.**

Where a bill of exception complains of the refusal of the court to exclude evidence because not responsive to the question propounded the bill must show that in the ruling attacked the court was in error. If the fact, the exclusion of which is sought, might for some reason be admissible, a bill is imperfect which fails to state the ground upon which the motion to exclude is founded. See Tubb v. State, 55 Tex. Crim. Rep. 606, and other cases cited. Branch's Ann. P. C., Sec. 211.

ON REHEARING.

**7.—Same—Bill of Exception—Incomplete—Presents No Error.**

Where a question is objected to by the state, and the objection sustained, appellant's bill complaining of the matter must set out the answers which he expected to present the matter properly to this court.

**8.—Same—Cross Examination—Of Appellant—Not Improper.**

It being clearly shown by evidence that appellant killed the deceased by shooting her with a pistol, there was no harmful error in permitting the state on cross-examination to ask appellant if he owned a pistol.

Appeal from the District Court of Potter County. Tried below before the Hon. Henry S. Bishop, Judge.

Appeal from a conviction of murder, penalty 99 years in the penitentiary.

The opinion states the case.

*John R. Palmer* of Amarillo, for appellant.

*A. A. Dawson,* State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at confinement in the penitentiary for a period of ninety-nine years.

The deceased, called Donna McGuffin Calvert, was shot and killed in the St. Charles Hotel at Amarillo. The testimony leads to the conclusion that the appellant had, for some time previous to her death, engaged in illicit sexual relations with the deceased. At the time of her death she was housekeeper at the hotel mentioned, and she and Fred Calvert were living together as husband and wife, though unmarried. One or two days before the tragedy, appellant became a guest in the hotel. According to his theory arising from his testimony, he became a guest of the hotel without knowledge of the fact that the deceased had her abode there; that after he arrived, she came to his room and they engaged in sexual relations. She also sold him several pints of whiskey. From the same source it appears that a few moments before the tragedy she came into the appellant's room and told him that she had a pint of whiskey for him and wanted five dollars; that about the time he was declining to make the purchase, Fred Calvert came into the room, closed the door, and, using an oath, said: "This is my wife, and right here is where you pay off or I will kill you." According to the appellant, Calvert accompanied the remarks with the movement of his hand to his pocket, indicating that he was about to draw a pistol, and believing that such was the intention of Calvert, the appellant grabbed his own pistol from under the head of his bed and fired; that the deceased, observing the movements, threw herself between them, and received shots which were intended for Calvert. Appellant claimed that he had no animosity towards the deceased and had no intention of injuring her.

Appellant claimed that all the shots fired by him were while the parties (he, the deceased and Calvert) were in Room No. 5, occupied by the appellant. He also claimed that he had no acquaintance with Calvert and had never seen him before the day on which the homicide took place.

According to the state's testimony, Calvert, Mrs. Sina Richey and the deceased were about to go riding in an automobile; the deceased left Calvert's room and went toward the front of the building for the purpose of getting the key to the automobile. Soon after she left she screamed and a shot was fired.

We gather from the testimony that the homicide took place upon the ground floor of the building, the front part of which consisted of an office. There was a main hall running from the office to a room in the back of the building. On the right-hand side of this hall where rooms Nos. 3, 5, 7, 19 and 20, and on the left side were rooms Nos. 2, 4, 8 and 11. The space between

rooms Nos. 4 and 8 was filled by a bathroom and a hall lead-
ing from the main hall to the bathroom. Appellant occupied
room No. 5, and Calvert room No. 19. The bathroom was
opposite room No. 5. The deceased (who still had life in her
when found by the first witness arriving after the alarm was
given) was lying on the hall floor opposite room No. 19. There
were five gunshot wounds, all on the left side, one in the arm,
two in the body, passing through, one in the thigh and one in
the knee.

According to Calvert's testimony, while he was standing in
the door of room No. 20 talking to Davenport, he heard a shot
and then a scream; he turned, looked into the main hall, and
saw the deceased in the hallway up towards the front, near
room No. 3. She ran toward the bathroom. The witness came
from the back of the hall (room No. 20) and went towards
the bathroom. Upon his first sight of the deceased, the appel-
lant was following her. He overtook her at the bathroom.
Previous to overtaking her but one shot had been fired. The
witness ran to the bathroom to assist, and when he reached the
doorway he observed the appellant with one hand upon the
shoulder of the deceased and shooting her with the other. She
was standing against the wall and about midway of the door.
The pistol in the appellant's hand was a foot or a little more
from the deceased. Upon reaching them Calvert said: "This
will never do" and tried to reach for the pistol which was in the
hand of the appellant. The appellant replied, "I will kill you,
too," and turned and shot Calvert twice—once in the neck and
once in the breast. While appellant was shooting Calvert, the
deceased ran in the direction of her room. After shooting the
witness, appellant continued shooting the deceased, and she fell
at the last shot in the doorway of room No. 19. It seems that
Calvert had fallen, and the appellant passed over Calvert's body
and fired the last shot at the deceased. Calvert finally succeeded
in reaching room No. 20.

The keeper of the hotel, while standing in the front entrance,
heard two shots and heard the deceased scream. He went to
the hallway and observed the deceased run out of the hallway
which went to the bathroom. The appellant was following her
and Calvert was running up the hallway from the rear. They
all mingled in the hallway. The appellant shot four or five
times right there. The deceased ran opposite room No. 8 and
fell, and Calvert went down the hallway to room No. 20.

The appellant having become a witness in his own behalf,
there was no error in receiving testimony going to show that

he had been prosecuted and acquitted of murder, there being nothing in the bill to show that the transaction was so remote as to preclude its admissibility.

The complaint of the refusal of the court to sanction the impeachment of the witness Calvert by showing specific acts of illicit relations with women other than the deceased is not shown to have been error.

The fact that a witness testified that there was blood in the hallway near the bathroom does not offend against any rule of evidence of which we are aware. It involved no expert opinion. Nor is there any error shown in rejecting the proffered testimony that Vincent, the keeper of the hotel, reprimanded the deceased for visiting the bedroom of the appellant. It was hearsay.

We have failed to perceive in the present record any legal reason for receiving testimony descriptive of the personal appearance of the deceased. As the matter is presented, however, we would not feel warranted in ordering a reversal upon that ground alone.

Bill No. 7 relates to the cross-examination of the state's witness, Fred Calvert, by counsel for the appellant and consists, in the main, of questions and answers. The questions propounded by appellant's counsel and the replies are set out as follows:

"Q. Do you tell me and the jury that this man Russell Parks' name was never mentioned to you by Donna McGuffin?

A. It was mentioned to me at one time and that was when I took Donna to her parents at Silverton.

Q. Tell us when that was?

A. I don't remember the date, but I think it was along about the latter part of October. It may have been the 1st of November. *It was mentioned to me because she got a letter there at the house and her mother showed me the letter. She said at the time, 'I am afraid of that man'.*"

"By counsel for defendant: 'I ask that that be stricken.' (Counsel then referring to the latter part of the answer as underlined above.)"

The only part of the answer which might have been prejudicial or objectionable is the concluding sentence, viz., "She said at the time, 'I am afraid of that man.'" The request to exclude was not confined to the part last quoted, but included the other

part of the answer underlined, which was not irresponsive to the question asked. No specific reason was given the court for excluding the part of the answer, and as the occurrence is portrayed in the very meager bill of exceptions, both the court and the witness apparently regarded the inquiry such as to call for the answer. Such was the interpretation of the trial judge as shown by his qualification of the bill. When complaint is made to the receipt of evidence or motion made to exclude, the bill must *show* that in the ruling attacked the court was in error. See Brown v. State, 43 Tex. Crim. Rep. 294, and other cases cited in Branch's Ann. Tex. P. C., Sec. 210. If the fact, the exclusion of which is sought, might for some reason be admissible, a bill is imperfect which fails to state the grounds upon which the motion to exclude is founded. Dixon v. State, 238 S. W. 227. When the court is called upon to withdraw evidence received without objection, a part of which is admissible, a bill directed against the whole is too general. Tubb v. State, 55 Tex. Crim. Rep. 606; Payton v. State, 35 Tex. Crim. Rep. 510, and other cases collated in Branch's Ann. Tex. P. C., Sec. 211. Application of these principles to the bill under consideration would demonstrate its inadequacy to show reversible error. However, viewed in the light of the qualification by the trial judge, the facts in evidence and the questions propounded to the witness as set out in the bill, the court would not feel justified in making the transaction the basis of reversal.

Deeming the evidence quite sufficient to support the verdict, and regarding none of the complaints of the rulings of the court upon the trial such as require or authorize this court to set aside the verdict of the jury sanctioned by the trial judge, the judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant objects to the statement in the opinion that bullets "passed through the body of deceased." We note in the testimony of the undertaker that two wounds in the left side "went through about the fourth or fifth rib." That said bullets were quite capable of going through the body is evident from the testimony of Calvert, who was shot by appellant at the same time and with the same pistol, who says he was shot in the back and the bullet came through "about here." The matter seems entirely immaterial in determining the correctness of the opinion. Appellant shot the woman in question a number of times and she died in the ambulance on the way to

the hospital a short time after the shooting, and the record suggests nowhere that she was killed in any other manner save by the shots.

Complaint is renewed of the fact that while a witness in his own behalf appellant was asked in reference to his having been indicted in Oklahoma some years before for murder, the objection being that evidence of such former indictment would furnish no reason for ill-will toward deceased. Nothing supports the idea that such testimony was offered for any purpose except as affecting appellant's credibility as a witness. It was admissible for such purpose. Citation of authorities on so plain a question and one so often decided would but encumber the record. The Barkman case, 52 S. W. 69, cited by appellant, and of whose holding he complains that we refused to give application, does not hold to the contrary, but merely says that appellant therein never having been indicted or legally accused of having killed deceased therein prior to the trial on which the testimony of such prior killing was introduced, proof of same was not competent to impeach him. There is no similarity between the doctrine in the Barkman case and that now under discussion.

Complaint is also renewed of our holding that no error was shown by bill of exceptions No. 3, but same is fully answered by the observation that the court having sustained the state's objection to the questions asked, it became incumbent on appellant to set out in the bill the answers which he expected. This he did not do. Tyron v. State, 77 Tex. Crim. Rep 493; Johnson v. State, 88 Tex. Crim. Rep. 136. What we have just said applies also to appellant's bill of exceptions No. 5, which he says we did not properly decide.

As bearing on the matters in his bill of exceptions No. 7, we observe that it appears therefrom that appellant's counsel was cross-examining state witness Calvert, his apparent purpose being to elicit that appellant had been the subject of conversation between deceased and witness. Appellant drew out of the witness that they had talked about him at a certain time and place. This would have given state's counsel the right to have said witness explain, and, under some circumstances, to recite said conversation at said time and place. The fact that the witness in answering appellant's question, related all of said conversation at said time and place, would not seem to affect its admissibility, nor make erroneous the action of the court in refusing to strike same from the record.

Appellant insists that we did not consider a bill in which he objected to state's counsel asking him on cross-examination if

he owned a pistol. It is obvious that appellant having used a pistol in shooting deceased and Calvert on the occasion in question, no error could result from an inquiry of him while on the witness stand, if he owned a pistol.

To contend that a witness who was present and saw the shooting, where the parties were at the time, could not testify that there was blood on the floor at such place, seems idle.

No error appearing, the motion for rehearing will be overruled.

*Overruled.*