**Tommy WRENN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57770.**

Court of Criminal Appeals of Texas, Panel No. 3.

March 26, 1980.

Rehearing Denied May 7, 1980.

Cecil Emerson and Robert S. Fain, Jr., on appeal only, Dallas, David L. Botsford, Dallas, on appeal only, for appellant.

Henry Wade, Dist. Atty., Ronald D. Hinds and Braden W. Sparks, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION

Before ODOM, PHILLIPS and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from a conviction for aggravated assault. Punishment was assessed at ten years confinement and a $5,000 fine. The sufficiency of the evidence is not challenged.

The record reflects that on September 14, 1976, the appellant went to the home of Ed Bodolay, the complaining witness. When Julie Hawkins opened the door for the appellant, an unidentified man jumped out

from behind the appellant with a gun in his hand. The appellant indicated to the man that Bodolay was upstairs. The gunman went upstairs, and pointed the gun at Bodolay. Bodolay said, "Wait a minute, Tommy will get his money." The man responded, "it's too late, you're a dead m___ f___," and shot Bodolay in the neck. A scuffle ensued, and Bodolay was able to get the gun. Bodolay chased the assailant down the stairs and collided with the appellant at the bottom of the stairs. The appellant kicked the gun away from Bodolay. The appellant asked Bodolay if he was hurt; Bodolay said "Damn right I am hurt," and the appellant responded, "That will teach you." Bodolay testified that he owed the appellant $750 for a gambling debt.

█ The appellant contends in two grounds of error that the trial court improperly allowed the prosecutor to ask "have you heard" questions of a witness on cross-examination during the guilt phase of the trial. We agree. The error occurred during the cross-examination of witness Robert Miers. On direct examination, Miers testified that he had known both the appellant and the complaining witness for many years. Miers testified that Bodolay had never held down a job for any length of time and that when Bodolay lived with Miers, he brought undesirable people around the house. The only testimony from this witness concerning the appellant is as follows:

"Q. You say you have known the Defendant about fifteen years, is that correct?

A. Yes, sir.

Q. And can you tell us whether or not you ever owed him any money or know anybody that has?

A. Yes, I do. I can, yes, sir.

Q. Of your knowledge and of your experience, has the Defendant ever used anybody other than himself to collect the money that was owed to him?

A. Absolutely not

MR. WESTERLAGE [Defense Counsel]: Pass the witness.

CROSS EXAMINATION
QUESTIONS BY MR. ELLISTON:

Q. I take it from your statements and effect you're saying that to your knowledge this Defendant's reputation for being a peaceful and law abiding citizen is good, is that correct?

MR. WESTERLAGE: Your Honor, he is putting words in his mouth.

MR. ELLISTON: Your Honor, that is what he is trying to get at.

THE WITNESS: I will say he is a moral—

MR. ELLISTON: Your Honor, I think although he didn't use the magic words, I think the effect of what he did was the same and I am trying to clarify from this witness if that is in effect what he is trying to tell this jury, before I ask my next question.

MR. WESTERLAGE: Your Honor, I think what he is doing is trying to put words into the mouth of this witness.

THE COURT: What other purpose would you be asking about the conduct of this person except to go to his character?

MR. WESTERLAGE: Well, it doesn't go into character of the witness, it goes into his truth and veracity of the statement of the complaining witness that somebody on this Defendant's behalf tried to collect money from him.

THE COURT: I think you're going to the Defendant, not to the complaining witness, when you ask whether or not—I'm going to allow the question. You may answer it.

\*   \*   \*   \*   \*   \*

Q. [Prosecutor]: Are you saying in effect from your last statement that to your knowledge this defendant's reputation for being a peaceful and law abiding citizen in the community in which he resides is good?

A. With all due respect, yes, and no, and I say yes and no, you know, if you want to use the letter of the law, you know, the absolute letter

of the law, well then perhaps the Defendant could be, you know, not one hundred per cent a law abiding citizen. But sometimes, I think we all find ourselves not to be one hundred per cent all law abiding citizens.

\* \* \* \* \* \*

Q. What I am asking you, if the effect of your testimony just a minute ago was to say that this Defendant's reputation for being a peaceful and law abiding citizen in the community in which he resides is good?

A. Yes, sir.

\* \* \* \* \* \*

MR. ELLISTON: Judge, he opened it up.

\* \* \* \* \* \*

Q. [Prosecutor]: All right, Mr. Miers, in view of your last statement, I want to ask you a couple more questions. Have you heard that Tommy Claude Wrenn, the Defendant in this case, in 1960 was arrested for the offense of aggravated assault on a peace officer?

(Whereupon the Appellant's objection was overruled.)

\* \* \* \* \* \*

Q. Well, had you heard that in 1964 he was arrested for the offense of theft by conversion?

(Appellant's objection overruled.)

\* \* \* \* \* \*

Q. Now, had you heard that in 1963, he was arrested for child desertion?

(Appellant's objection overruled.)

\* \* \* \* \* \*

Q. Had you heard that in 1967, he was arrested for lodging a fraud?

\* \* \* \* \* \*

Q. Have you heard that in 1966, he was arrested for passing a worthless check?

\* \* \* \* \* \*

Q. Well, have you heard that in 1967, he was arrested as a fugitive from justice in Colorado?

\* \* \* \* \* \*

Q. Well, have you heard that in 1971, he went to the Federal penitentiary for mail fraud?

\* \* \* \* \* \*

Q. . . . Well, have you heard that November the 13th, 1972 he was arrested for forgery in passing?

\* \* \* \* \* \*

Q. All right. Had you heard or have you heard that in 1972, he was convicted of swindling?

\* \* \* \* \* \*

Q. Have you heard that in 1976—well, have you heard that in 1975 he was arrested for shoplifting?

\* \* \* \* \* \*

Q. Well, have you heard that in 1976, he was convicted of a liquor law violation?"

The purpose of a "have you heard" question is not to show the specific instances of bad conduct of the accused, but rather to test the credibility of the witness. *Livingston v. State*, 589 S.W.2d 395 (Tex.Cr. App.1979). In *Livingston v. State*, supra, we examined the issue of when "have you heard" questions were appropriate, and found that,

"When a witness testifies to conduct of the defendant that is so broad as to infer that the defendant has good general character, the witness' credibility can be impeached with 'have you heard' questions involving specific instances of misconduct inconsistent with generally good character. But when a witness testifies to instances of conduct that go no further than to imply that specific traits of character are good, the witness can be impeached with 'have you heard' questions involving only those instances of misconduct inconsistent with the specific character traits placed in issue."

In *Els v. State*, 525 S.W.2d 11 (Tex.Cr.App. 1975), this Court held that while "magic words" are not required to make a witness a character witness, not every defense wit-

ness is a character witness.[1] In this case, Miers testified that the appellant had never used another person to collect money owed to him. This testimony in no way to put the appellant's general reputation for being a law abiding citizen in the community in issue. See *Jewell v. State*, 593 S.W.2d 314 (Tex.Cr.App.1980) (Opinion on Motion for Rehearing); *Ward v. State*, 591 S.W.2d 810 (Tex.Cr.App.1979). The appellant's reputation was placed in issue by the State's own cross-examination. This is improper. The State may not transform, by its own questions, a witness who is not a character witness into one in order to be able to ask "have you heard" questions. *Livingston v. State*, supra. *Els v. State*, supra. Inasmuch as twelve instances of prior misconduct were brought out in the cross-examination, we cannot find that the error was harmless. See *Els v. State*, supra. The case is therefore reversed and remanded to the trial court.

---

1. We recognize the distinction made in *Livingston v. State*, supra, between a reputation witness and a character witness. "A reputation witness is a character witness insofar as his testimony inferentially proves character, but a witness whose testimony proves character by a method other than reputation is not a reputation witness." *Livingston v. State*, at 400. See also *Ward v. State*, 591 S.W.2d 810 (Tex.Cr. App.1979).