**John M. JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61310.**

Court of Criminal Appeals of Texas, Panel No. 1.

June 9, 1982.

David Spencer, Austin, for appellant.

Ronald Earle, Dist. Atty., and Bill White, Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, CLINTON and McCORMICK, JJ.

## OPINION

CLINTON, Judge.

In this appeal from a conviction for the offense of attempted rape alleged to have been committed November 21, 1977, appellant advances five grounds of error which implicate the workings of some provisions of V.T.C.A. Penal Code, § 21.13,[1] as amended; attacks propriety of a "have you heard" question put to one of his witnesses on punishment; and challenges sufficiency of the evidence to support the verdict of guilty returned by the jury that, as well, assessed punishment at two years confinement.[2] To better understand the problems presented we first summarize the largely uncontradicted evidence on the merits of the charge.

Eighteen years of age and married some three months at the time of the instant offense, appellant resided in the Spicewood community. On the occasion in question the complainant, we call Dianne, was working alone at a convenience store on Texas Highway 71 about a mile northwest from its "Y" with U.S. Highway 290. She was twenty six years old.

At about 11:00 p. m. that night appellant entered the store, bought some coffee and started a conversation with her. He used the telephone in the store several times, went to the restroom in the back of the store several times, drank coffee and talked to Dianne until about ten or fifteen minutes before 12:00 p. m. Then, while she was cleaning the coffee machine, appellant held her from behind, pinned her arms down and grabbed her private parts. Appellant attempted to drag her toward the back of the store. She struggled. During the struggle, appellant put his hand under her shirt and on her left breast. He also unsnapped her pants. During the struggle he said the word "fuck" in a sensuous manner. She continued to struggle and finally pulled appellant with her to the front door, and started screaming for help. At that time, appellant got into a pickup truck and left. Dianne called the Travis County Sheriff's Department and gave them a description of appellant and the license number of the truck. Appellant was arrested shortly thereafter by a Travis County Deputy Sheriff, while driving the truck. Two deputies of the Travis County Sheriff's Department testified about appellant's arrest, about the complainant's report, and about her identification of appellant at the scene of his arrest. Appellant did not testify and did not offer any evidence at the guilt stage of the trial.

■ Appellant now says the evidence does not establish his specific intent to commit the offense of rape. He interprets the facts to "indicate that he did not intend to do anything to the complaining witness without her consent."[3] Applying the constitutional minimum standard required to enforce the due process right to freedom from conviction except on proof beyond a reasonable doubt, *Griffin v. State*, 614 S.W.2d 155, 158 (Tex.Cr.App.1981), after viewing the evidence in the light most favorable to the prosecution, we are satisfied that any rational trier of fact could have found the essential element of specific intent to commit rape in the mind of appel-

1. Entitled "Evidence of Previous Sexual Conduct," the statute directs the trial court to conduct an in camera hearing to determine whether testimony an accused proposes to adduce on the matter is "admissible," and then to "accordingly limit the questioning." *Id.*, subsection (b). Subsection (c) provides: "The court shall seal the record of the in camera hearing required in Subsection (b) . . . for delivery to the appellate court in the event of an appeal." The amendment had become effective September 1, 1975, and all agree it is applicable.

2. Appellant's sworn application for probation as prescribed and supported by testimony was rejected by the jury.

3. This conclusion follows, according to appellant, from "the fact that she was able to resist him, although he was stronger than she, that he left as soon as she started yelling for help. . . , that he was willing to discuss personal matters, and that he offered no resistance or flight when arrested . . . "

lant, beyond a reasonable doubt.[4] Certainly during the struggle his every act was consistent with his spoken word that, when said sensuously, tells it all. We find the evidence is sufficient to support the jury verdict. See *Hackbarth v. State*, 617 S.W.2d 944, 945–946 (Tex.Cr.App.1981).

■ Turning to grounds of error one through five, we note the paucity of precedent touching the 1975 addition to V.T.C.A. Penal Code, Chapter 21, and none has been provided by the parties.[5] By its terms § 21.13 applies only to admitting evidence "under Sections 21.02 through 21.05 of this code [rape, aggravated rape, sexual abuse, and aggravated sexual abuse]," and then "only to the extent that the judge finds that evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." However, we see no reason to except trials of the offense of at-

tempted rape from constraints and procedures of § 21.13.[6]

■ At the in camera hearing, responding to an invitation by the trial court to justify the tender of testimony he had drawn from complainant,[7] appellant's attorney stated, "[W]e feel the State is attempting to place her in the light of lily white, and we would like to show the jury that is not the situation, and that there was a very high probability she elicited some of the fondling that occurred." The trial court held the evidence was not material, and we agree.[8]

The first claim for admissibility hardly rises to a trait of character for unchastity, and in Texas, even before § 21.13, that could not be shown by acts of unchaste conduct with other men. *Tyler v. State*, 145 Tex.Cr.R. 315, 167 S.W.2d 755 (1943);[9] *Young v. State*, supra, at 25; Ray, Law of

4. The constitutional standard we apply comes from *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

5. The Court seems to have addressed Section 21.13, supra, only twice during the seven year period: *Young v. State*, 547 S.W.2d 23, 25 (Tex.Cr.App.1977) and *Wilson v. State*, 548 S.W.2d 51 (Tex.Cr.App.1977). See generally Weninger, "Factors Affecting the Prosecution of Rape: A Case Study of Travis County, Texas," Vol. 64, No. 3 Va.L.R. 357, 363–366 (April 1978), in which the statute is seen as utilizing "a flexible rule for judicial treatment of prior sexual activity and emphasizes the prejudice to the prosecution and the humiliation to a complaining witness that result from admission of such evidence." *Id.*, at 364. See also Vaught, "Rape—Admissibility of Victim's Prior Sexual Conduct: What is the Law in Texas?" Vol. 31, No. 3 Baylor L.R. 317 (Summer 1979), concluding that § 21.13 is a legislative attempt "to balance the conflicting rights of the rape victim and the accused." *Id.*, at 327.

  Of course, not being trial counsel, appellant's present attorney has the peculiar handicap of laboring without a record of the in camera hearing, and so may not be expected to treat the merits of whatever issues were developed therein.

6. In his first three grounds of error appellant makes the point that he must have access to the transcription of the notes of the court reporter taken during the in camera proceeding if his right to appeal adverse rulings of the trial court under § 21.13 is to have any meaning. We reserve the point to another day since the

five pages of the record we have unsealed present such innocuous matters that we would not be assisted in our evaluation of them by otherwise helpful illumination from appellate advocacy. Judicial economy dictates that we reject appellant's suggestion that the appeal be abated with instructions to the trial court to give appellant access to the record of the in camera proceeding, and await the day we are shown that denial of access seems to have infringed the right of appeal.

7. We do not state the testimony for obviously subsection (c) of § 21.13 contemplates unadmitted matter will be withheld from the public record. Suffice to say the trial court ruled out the name of the father of her children and held immaterial the fact that several years earlier the unmarried complainant had lived in another state with a man to whom she was then engaged.

8. In his fourth and fifth grounds of error appellant contends blindly that "a certain question" could not be asked, and that "certain testimony" was not admissible, before the jury. Of course, he is unable to indicate what those "certain" matters are, but we have easily spotted them.

9. "A woman who has been intimate with some trusted person, or even more than one, should not, by reason thereof, be subjected to the ravages of merciless men or lowered to the status of a common prostitute." *Tyler v. State*, supra, at 756.

Evidence, § 1494, 2 Texas Practice 180 and n. 40. The second smacks of "consent," but that issue is not raised by a plea of not guilty, *Roper v. State*, 375 S.W.2d 454, 456 (Tex.Cr.App.1964), and appellant presented no defense, choosing to rest behind the State. When an issue of consent is not raised in a rape case, unchastity is no defense. *Wright v. State*, 527 S.W.2d 859, 863 (Tex.Cr.App.1975); *Esquivel v. State*, 506 S.W.2d 613, 616 (Tex.Cr.App.1974); *Haynes v. State*, 498 S.W.2d 950, 952 (Tex.Cr.App. 1973); *Roper v. State*, supra. Thus, absent an issue of consent, evidence of unchastity is not admissible, and excluding it is not error. *Haynes v. State*, supra, at 952; 4 Branch's (2nd ed.) § 1961, p. 287.

Accordingly, grounds of error four and five are overruled, and we find it unnecessary to reach grounds one through three.

■ At the punishment hearing the prosecutor called Barbara Lorraine Barrett. She testified that she worked at a convenience store located just off Texas Highway 71 near Paleface Park—some fifteen miles from the scene of the instant offense. Barrett was "acquainted" with appellant and knew his reputation for being a peaceful and lawabiding citizen is bad. Appellant called his mother to testify about his background: his mother and father were divorced and she remarried; they lived at some unspecified location in Burnet County; she had heard that her son had "some problems" in high school, and he did not finish; he had "some problems" with his stepfather and on one occasion they caused appellant to be arrested and jailed "for coming into our home;" he had a "drinking problem" during the time he was staying in their home; these problems, symptomatic of his difficulties in readjusting to the existence of his stepfather, manifested themselves in the first six months or so of 1977, for in August 1977 appellant married and moved away with his new wife.[10]

In another in camera hearing before beginning his cross-examination the prosecuting attorney stated his belief that portions of the direct examination of appellant's mother had opened up "the 'have you heard' questions on the part of the State." After a brief colloquy concerning the import of the testimony, the trial court ruled "it has been opened up" to such questions that were proper, and cautioned appellant to object for the record.

Reviewing highlights of her testimony, the prosecutor then "presumed" that in alluding to "problems" the witness had been "speaking in terms of the law." She replied, "Right, or just any problems." The prosecutor inquired, "Mrs. Andrews, have you heard that Mike Johnson . . . is accused of sexually assaulting Barbara Burnett at the U-Totem Store near Paleface Park on Highway 71 in November of 1977?" Over objection, the mother answered that she had not heard that.

In his sixth ground of error appellant claims error in overruling his objection and thereby requiring the witness to answer the "have-you-heard" question. He argues that "it was crystal clear that the witness' testimony referred to the specific trait of Appellant's having given her and her husband problems, and was not a comment on his general character or reputation." For its part, the State supports the trial court with a citation to *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972), a decision involving a true reputation witness for the accused; but its argument seems to have in mind *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App. 1973) and its sizeable progeny.

However, *Childs v. State*, supra, was overruled by the Court in *Ward v. State*, 591 S.W.2d 810, 818 (Tex.Cr.App.1978) (Opinion on motion for rehearing) when it was determined that "the fallacy in the *Childs* rule is that it ignores the difference between character and reputation," *id.*, at

---

10. From May 1976, when appellant moved in with his mother and stepfather, to January 1977, he had been "completely trustworthy:" they trusted him with their "brand new '75 LTD," and he would take it, "go see his girlfriends, go to the movies, comes back on time

with no problems." In the next six months, though, he exhibited "typical teenager belligerence, reluctant to carry out orders, in cooperation with others," and that is about all his mother could "really say and be truthful about it."

817. That difference was being explained contemporaneously by the Court in *Livingston v. State*, 589 S.W.2d 395 (Tex.Cr.App. 1979), and the lessons of both have since been consistently followed to find error in permitting a witness who testified on personal knowledge or as to character to be crossexamined with questions allowed only to a reputation witness. See, e.g., *Washington v. State*, 590 S.W.2d 493 (Tex.Cr. App.1979); *White v. State*, 590 S.W.2d 936 (Tex.Cr.App.1979); *Jewell v. State*, 593 S.W.2d 314 (Tex.Cr.App.1980); *Wrenn v. State*, 597 S.W.2d 369 (Tex.Cr.App.1980); *Brown v. State*, 605 S.W.2d 572, 573 (Tex. Cr.App.1980); *Penagraph v. State*, 623 S.W.2d 341 (Tex.Cr.App.1981). It is no longer a matter of "opening the door," but one of determining whether the testimony given by a witness on behalf of an accused at the punishment hearing goes to the *reputation* of the latter, rather than known character traits.

The error here occurred during the punishment stage of the trial, but it could only have served to prejudice the jury in its assessment of punishment by "showing rumors of inadmissible acts of misconduct by the appellant," *Penagraph v. State*, supra, at 345. Thus, the jury rejected the application for probation of this eighteen year old appellant who had never been convicted of a felony and is not shown to have been convicted of any other offense. The reputation testimony from Barbara Lorraine Barrett, hard on whose heels came the impermissible "have-you-heard" question about appellant being accused of sexually assaulting her during the same month and along the same stretch of Highway 71, was not lost on the jury. The sixth ground of error must be sustained.

The Court has found no error in the guilt stage, but for the error during the punishment hearing the cause must be reversed.

The judgment is reversed and the cause remanded.