OPINION
NYE, Chief Justice.
In a consolidated trial of four criminal cases, appellant was convicted of Harassment, Criminal Mischief, Assault, and Driving While Intoxicated. The jury assessed a total of two and a half years in jail and $7,000 in fines. The trial court granted partial probation. We reverse his convictions.
Around 9:00 p.m. on June 27, 1984, appellant made several telephone calls to the Beeville Police Department. He was upset because his fourteen-year-old daughter had run away from home. The police dispatcher handling his calls hung up on him several times because appellant was “extremely belligerent” and used abusive and profane language.
Appellant also contacted the Bee County Sheriff’s Department. A deputy sheriff was dispatched to appellant’s house to gather information about appellant’s missing daughter. Appellant began “cussing and raising hell” with the deputy and threw a plate of chicken at him. The deputy left.
A few hours later, the deputy heard about a window being broken at the local newspaper office. While investigating, he saw appellant and his wife leave appellant’s bookstore, which is near the newspaper building, and drive off in appellant’s automobile. Based on his observations of appellant earlier that night, the deputy felt that appellant was too intoxicated to be driving. When a backup police unit arrived, the deputy had appellant pull to the side of the road. While being questioned, appellant threw a cup of coffee in the city police officer’s face. Appellant was arrest *550 ed and took an intoxilyzer test. His blood-alcohol content registered 0.13%.
Appellant was charged and convicted of Harassment for his abusive phone calls to the police dispatcher; of Criminal Mischief for breaking the newspaper’s window; of Assault for throwing coffee in the police officer’s face; and of Driving While Intoxicated.
The first of appellant’s twelve grounds of error involves all four convictions. Appellant contends the trial court improperly allowed the prosecutor to ask appellant’s character witness questions about appellant’s reputation. At the punishment stage of trial, appellant’s attorney carefully questioned appellant’s aunt about the relationships between appellant and people known by his aunt. On cross-examination, the prosecutor sought to impeach her testimony by asking whether she had heard of specific acts of misconduct by appellant. These “have you heard” questions were allowed over appropriate defense objections.
The distinction between “character” and “reputation” is a crucial one. “Character” refers to the inherent qualities of a person. “Reputation” applies to the collective opinion of the community as to those qualities. See Livingston v. State, 589 S.W.2d 395, 399 (Tex.Crim.App.1979). A character witness is one who testifies to specific character traits of an accused of which the witness has personal knowledge. A reputation witness, on the other hand, testifies to what he or she has heard through others about the defendant’s standing in the community. Thus, “have you heard” questions are a proper form of impeachment for reputation witnesses but not for character witnesses. See, e.g., Johnson v. State, 633 S.W.2d 888, 892 (Tex.Crim.App.1982); Penagraph v. State, 623 S.W.2d 341, 345 (Tex.Crim.App.1981); Livingston v. State, 589 S.W.2d 395, 400 (Tex.Crim.App.1979); Ward v. State, 591 S.W.2d 810, 818 (Tex.Crim.App.1978).
An examination of the record reveals that appellant’s aunt, the witness whose testimony is at issue, was a character witness, not a reputation witness. It was clear from her testimony at the punishment stage of trial that she was relating facts within her personal knowledge, not matters she had heard others tell her about appellant. In fact, the prosecuting attorney objected to a question asked by appellant’s attorney to appellant’s aunt when it was still unknown whether she was a reputation witness or not. It is clear from the ensuing comments by appellant’s attorney and the trial court that appellant’s aunt was offered only as a character witness (the emphasis is ours throughout):
MR. KIMBROUGH [The Prosecutor]: Your Honor, I’m going to try to — I’m going to object at this point and determine if this is a character or reputation witness; that this is not the proper fashion in which the witness is asked questions concerning the individual’s reputation with others. If the witness is being offered as a reputation witness [to testify to appellant’s reputation] as a peaca-ble, law-abiding citizen, then we think that the proper predicate should be laid and those questions should be asked in the proper manner.
THE COURT: Mr. Manning [appellant’s attorney], I agree with Counsel. Are you offering the witness as a reputation witness?
MR. MANNING: No.
THE COURT: All right. You may ask her—
MR. MANNING: All I’m asking her— and I’m asking again.
Q. (By Mr. Manning) what is the way in which he relates to other people, as you know it? The people that you know, that he knows, and how he relates to them?
THE COURT: All right. Just a moment. Same objection?
MR. KIMBROUGH: Same objection, Your Honor.
THE COURT: The witness is instructed to answer the question only of those matters within your personal knowledge or relations. Counsel for State will have the opportunity to cross-examine *551 you on exactly what — on exactly what you say to test you as to whether or not it’s from your personal experience.
Q. (By Mr. Manning) Right. I’m only asking what you have seen yourself of the people that both of you know.
A. Well, when he’s in our home, we have friends in. Well, he’s always friendly with everybody. When I see him on the streets or the cafe, he’s always friendly with everybody.
MR. MANNING: Thank you. Pass the witness.
On cross-examination, the prosecutor, over timely and appropriate defense objections, was allowed to ask Ms. Tucker whether she had heard of various acts of misconduct by the accused. These included arrests for window-breaking incidents, a terroristic threat, a criminal tresspass, an invasion of privacy, and harassment by phone. The trial court permitted the “have you heard” questions based upon the authority of Williams v. State, 566 S.W.2d 919 (Tex.Crim.App.1978).
The Williams Court noted that the testimony at issue in Williams was nearly identical to the testimony in Childs v. State, 491 S.W.2d 907 (Tex.Crim.App.1973), and the Williams Court relied on Childs to sustain the defendant’s conviction. In Childs, the defendant’s father was asked, “Q. And has his conduct been good since he has been there while he has been there at home? A. Really has.” In analyzing this testimony, the Childs Court blurred the distinction between character and reputation witnesses and said, “Appellant may not have a witness testify about his good character traits but avoid ‘placing his reputation in evidence’ simply by not specifically asking whether appellant enjoyed a good reputation in the community.” Childs at 909. The convictions in both Childs and Williams were upheld. See also Salazar v. State, 494 S.W.2d 548 (Tex.Crim.App.1973).
Interestingly, shortly after the Williams case was decided, the Court of Criminal Appeals abandoned the above-quoted Childs rule in Ward v. State, 591 S.W.2d 810 (Tex.Crim.App.1978) (Opinion on motion for rehearing). The Court held, “The fallacy in the Childs rule is that it ignores the difference between character and reputation.” Id. at 817. The Court explained:
Since the purpose of a have you heard question is to test the witness who purports to be familiar with hearsay and rumors of the accused’s reputation, a witness who has not professed to be familiar with that reputation in the community could not logically be discredited by questions of whether he has heard other rumors of acts inconsistent with that reputation. Simply stated, there is no reasonable basis for asking have you heard questions of a witness who testifies to his personal opinion of someone’s character, as opposed to the reputation of that person’s character. Since appellant’s, wife was not testifying to his reputation, no have you heard questions to test familiarity with that reputation should have been allowed at all.
Id. at 818 (emphasis in original).
The Court of Criminal Appeals has consistently approved of its holding in Ward. See Johnson v. State, 633 S.W.2d 888, 891-92 (Tex.Crim.App.1982) and authorities cited therein. Cf. Rutledge v. State, 693 S.W.2d 681 (Tex.App.-Dallas 1985, no pet.). Thus, it is error to permit a witness who has testified on personal knowledge or as to character to be cross-examined with questions allowed only to a reputation witness (“have you heard” questions). Johnson at 892. This is true whether the testimony occurs during the guilt phase of trial or the punishment phase. Id. at 892; Penagraph v. State, 623 S.W.2d 341, 345 (Tex.Crim.App.1981). The correct methodology is to determine “whether the testimony given by a witness on behalf of an accused at the punishment hearing goes to the reputation of the latter, rather than known character traits.” Johnson at 892 (emphasis in original).
We have already concluded that the testimony of appellant’s aunt established her solely as a character witness for appellant. Although she did say that appellant “was *552 always friendly with everybody,” she had been admonished by the trial court to answer based only upon her personal knowledge. She makes it clear that when she sees appellant, he is friendly with others; she obviously was testifying only from her personal knowledge.
Although appellant’s aunt was a character witness and not a reputation witness, the trial court finally allowed her to be cross-examined with “have you heard” questions based upon the authority of Williams. That case relied on Childs, and since the Childs case has now been overruled in Ward, the trial court obviously relied on bad case law.
We are reluctant, but must hold that it was error for appellant’s aunt to be cross-examined by “have you heard” questions. The error was preserved for appeal by appellant’s able trial attorney, and it is reversible error. It caused or may have caused prejudice to be interjected into the deliberations of the jury in its assessment of punishment by showing inadmissible rumors of acts of misconduct by the appellant. See Johnson at 892; Penagraph at 345-46; Ward at 815. The error was not subsequently cured by the trial court’s partial probation of appellant’s jail sentences and fines. We sustain appellant’s first ground of error.
Appellant’s second, fourth, seventh, and twelfth grounds challenge his conviction for driving while intoxicated under TEX. REV.CIV.STAT.ANN. art. 67011-1 (Vernon Supp.1986). These grounds of error are overruled.
Article 6701/ -1(a)(2)(B) provides that an individual is legally intoxicated if he has an alcohol concentration in his body of 0.10% or more. Intoxilyzer testing showed appellant’s blood-alcohol concentration to have been 0.13% shortly after he was arrested. Appellant contends in his twelfth ground of error that this statute is unconstitutional since it establishes a conclusive presumption of guilt.
Appellant’s argument has been rejected in Scherlie v. State, 689 S.W.2d 294 (Tex.App.—Houston [1st Dist.] 1985, pet. granted) and Forte v. State, 686 S.W.2d 744 (Tex.App.—Fort Worth 1985, pet. granted). Those courts held that the statute did not create a presumption at all; rather, “once it is shown that the defendant had an alcohol concentration of 0.10% or more, there is nothing for the jury to presume.” Scherlie at 296. See also Forte at 747-48.
By his second ground of error, appellant contends that his constitutional right to counsel was violated because he was not afforded an attorney prior to his decision to submit to the intoxilyzer breath test.
Appellant relies this time on Forte v. State, 686 S.W.2d 744 (Tex.App.—Fort Worth 1985, pet. granted) for his position. That court reversed a Driving While Intoxicated conviction and held that “a person has a right to counsel prior to making a decision whether to submit to the chemical test referred to in arts. 6701L-1 and 5.” Id. at 754. The court based its rationale on the United States Supreme Court’s decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In Wade, the Supreme Court interpreted the Sixth Amendment to grant a criminal defendant a right to counsel at any “critical stage” of the proceedings against him. The Forte Court concluded that it is a critical stage when police ask a person to submit to a breath test for alcohol, and reversed the defendant’s conviction. Cf. Gathright v. State, 698 S.W.2d 260 (Tex.App.—Fort Worth 1985, no pet.) (right to counsel not violated where accused does not assert it, distinguishing Forte).
Several .other Texas appellate courts have disagreed with the Forte analysis. In McCambridge v. State, 698 S.W.2d 390 (Tex.App.—Houston [1st Dist.] 1985, pet. granted), for example, the Houston Court reasoned that it is not a critical stage in the proceedings when a police officer asks for a blood-alcohol test:
The constitutional right to assistance of counsel attaches when adversary judicial proceedings are initiated against an accused, Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and the *553 government has committed itself to prosecute. 406 U.S. at 689, 92 S.Ct. at 1882. The defendant is entitled to the presence of counsel at critical confrontations with the state to assure that his right to a fair trial will be protected. See United States v. Wade, 388 U.S. 218, 226-27, 87 S.Ct. 1926, 1931-32, 18 L.Ed.2d 1149 (1967). But we disagree with the analysis in Forte, concluding that it is a critical stage in the proceedings when a police officer requests a breath test. Preparatory steps in the state’s gathering of evidence, such as taking fingerprints or a blood sample, have been held not to constitute a critical stage in the prosecution of the accused. Wade, 388 U.S. at 227-28, 87 S.Ct. at 1932-33; see also Yates v. State, 679 S.W.2d 534, 536 (Tex.App.—Tyler 1984, pet. ref’d).
Id. at 394. See also Dunn v. State, 696 S.W.2d 561 (Tex.Crim.App.1985).
The McCambridge Court concluded that no right to counsel exists merely because a police officer asks a motorist for a breath test. McCambridge at 394. See also Ellis v. State, 696 S.W.2d 209 (Tex.App.—Eastland 1985, pet. filed); Yates v. State, 679 S.W.2d 534 (Tex.App.—Tyler 1984, pet. ref’d); Growe v. State, 675 S.W.2d 564 (Tex.App.—Houston [14th Dist.] 1984, no pet.).[1]
It is not necessary to reach the merits of appellant’s argument because appellant’s attorney did not object at trial to the admission into evidence of appellant’s 0.13% intoxilyzer result. Indeed, this information was drawn out of the State’s expert witness during cross-examination by appellant’s attorney. Appellant failed to preserve error, even though his assigned error involves a constitutional right. See generally Rogers v. State, 640 S.W.2d 248, 264-65 (Tex.Crim.App.1982) (Opinion on State’s second motion for rehearing); Dunlap v. State, 477 S.W.2d 605, 606-07 (Tex.Crim.App.1971).
Appellant, in his seventh ground, asserts that the trial court erred in not directing a verdict of acquittal since the evidence did not establish the number of grams of alcohol in appellant’s body at the time of his arrest. We disagree. The proof at trial established that appellant’s intoxilyzer reading was 0.13%. The State’s expert witness testified that this figure represented his blood-alcohol concentration and that 0.10% was the legal limit of intoxication. This evidence satisfied Article 6701 l -1 and the trial court’s jury charge.
In his fourth ground, appellant contends that the trial court’s charge to the jury “was unduly suggestive of the infallibility of the intoxilyzer device.” After carefully examining the court’s charge, we find that appellant’s rights were adequately protected. The trial court, by its charge, strived to ensure that the jury would not consider the intoxilyzer results without first examining the machine’s reliability.
Appellant’s third, sixth, and eleventh grounds of error, which relate to his conviction for Criminal Mischief, have been carefully considered and are overruled.
Appellant’s fifth and eighth grounds involve his conviction for Harassment under *554 TEX. PENAL CODE ANN. § 42.07(a) (Vernon Supp.1986).
In his fifth ground of error, appellant alleges that a fatal variance existed between the Harassment complaint and the court’s charge to the jury. The State alleged that appellant committed the offense by making repeated telephone calls to the female police dispatcher “in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend” the dispatcher, in accordance with Section 42.-07(a)(4).
The court’s charge does not accurately track the language of Subsection (a)(4), however. Instead, the charge required the jury to consider whether appellant’s telephone call to the dispatcher contained “a comment, request, suggestion, or proposal that is obscene_” Appellant’s contention that the court’s charge, by mixing these two subsections over his objection at trial, is reversible error. We agree. The charge did not track the indictment. We sustain appellant’s fifth ground of error.
In his eighth ground, appellant asserts that the trial court erred in excluding evidence of his intent in the Harassment case.
Appellant was charged with the offense of Harassment by making repeated telephone calls “intentionally with intent to alarm, abuse, torment and embarrass” the police dispatcher. During appellant’s testimony, objection was sustained to questions about his intent in making the phone calls to the police department. In a bill of review, he testified he “didn’t mean to talk that way ... I didn’t have any blame on the young lady at all” and that he was only trying to “make sure and find out if they was (sic) looking for my daughter.” (Emphasis supplied.)
An essential element of the offense is the “intent to harass, annoy, alarm, abuse, torment, or embarrass another_” TEX. PENAL CODE ANN. § 42.07 (Vernon Supp.1986). Appellant’s intent in making the phone calls was necessarily in issue. When he took the witness stand in his own behalf, he should have been permitted to testify about his intent in making the phone calls; it was error for the trial court to refuse to admit appellant’s testimony to that end. See Burnett v. State, 466 S.W.2d 561, 560 (Tex.Crim.App.1971) (trial court committed reversible error by refusing to permit defendant to testify that he had no intention of killing the deceased); Lozano v. State, 83 Tex.Cr.R. 174, 202 S.W. 510, 512 (Tex.Crim.App.1918) (“A defendant, testifying in his own behalf, has a right to state his intent.”). We sustain appellant’s eighth ground of error.
It is not necessary for us to consider appellant’s ninth ground of error in view of the disposition of the case.
By his tenth ground, appellant argues that he was denied due process because the four cases were consolidated in one trial. Appellant advances no authority for this argument. Texas courts have often upheld consolidation of cases where, as here, the accused has consented to the consolidation. See, e.g., White v. State, 495 S.W.2d 903 (Tex.Crim.App.1973). We overrule his tenth ground.
' We REVERSE and REMAND the judgment of the trial court in all four causes.

. Other courts across the country have also decided the issue raised by appellant. Of particular interest is Nyflot v. Commissioner of Public Safety, 369 N.W.2d 512 (Minn.1985). In Nyflot, a driver’s license revocation case, the Minnesota Supreme Court held that a motorist does not have a right to counsel to aid him in his decision concerning whether to submit to chemical testing for alcohol. The United States Supreme Court recently dismissed Nyflot’s appeal "for want of a substantial federal question.” Nyflot v. Minnesota Commissioner of Public Safety, — U.S. -, 106 S.Ct. 586, 88 L.Ed.2d 567, 38 Crim. Law Rptr. 4120 (1985). By its action, the Supreme Court may have determined that no right to counsel exists in the situation urged by appellant.
We note, however, that Justice Kelley’s concurring opinion in Nyflot, 369 N.W.2d at 518, points out that the case was a civil suit, not a criminal prosecution. He noted that the constitutional right to counsel does not attach in civil proceedings such as license revocations and argues that the majority should therefore never have reached the right to counsel issue. Since the Supreme Court did not mention why it dismissed Nyflot’s appeal, it is possible that the Court dismissed the appeal solely on the ground discussed by Judge Kelley.