**Mark Anthony MONCRIEF, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 1144–84.

Court of Criminal Appeals of Texas, En Banc.

April 16, 1986.

Joe Lee Register, Lufkin, for appellant.

Gerald A. Goodwin, Dist. Atty., Joe Crawford and Clyde M. Herrington, Asst. Dist. Attys., Lufkin, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

A jury found appellant guilty of murder in killing another by shooting him with a shotgun; the trial court assessed punishment at confinement for a term of thirty years.

Sufficiency of the evidence is not challenged. To indicate the factual basis for his contentions it is enough to say that through the testimony of one Joey Deaton the State proved appellant made several

incriminating statements concerning why he shot and killed the deceased, and appellant countered with testimony from many witnesses that Deaton's reputation for truth and veracity was bad, and from several who knew him that appellant was not "a violent person;" the State then adduced on crossexamination of another defense witness that appellant's reputation for being a law abiding citizen is bad.

On his direct appeal appellant complained that during trial on the merits the State was erroneously permitted to introduce over his objection testimony going to his bad reputation for being a peaceful and law abiding citizen before he had placed that character trait in issue. Finding that appellant failed to preserve his claim and that he had "opened the door" for the State to proffer the reputation testimony, the Beaumont Court of Appeals affirmed the judgment of conviction. *Moncrief v. State*, 690 S.W.2d 10 (Tex.App.—Beaumont 1984). We granted his petition to review the reasons given for that decision and, having done so, will affirm.

During crossexamination of Deaton counsel for appellant drew negative answers to his questions as to whether Deaton "had ever known [appellant] to be a violent person" or "to ever start any problems with anyone." A witness for appellant, Bill Boutcher, also testified he did not "know [appellant] as a violent person" or "to be an aggressive person;" another, Vechel Renfro, said appellant's "character [is] good."[1] The State did not object.

■ Appellant also called Floyd Wright to impeach the credibility of Deaton by testifying that his reputation for truth and veracity is bad and such that he is not entitled to be believed under oath. On crossexamination, over objection, the State

had Wright testify that he knew appellant's reputation for being a peaceful and law abiding citizen, and then got his estimation of it, *viz:*

> "As far as being law abiding [sic], probably not. Peaceful, I've never seen the boy cause no trouble."

That testimony was received after what we perceive to be protest sufficient to inform the trial court and the prosecutor of grounds for it;[2] the matter was therefore preserved for review. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977). Accordingly, we turn to address appellant's contention.

There is authority for the proposition that while an accused may introduce evidence of a relevant trait of character to suggest that it is improbable he committed the offense charged, only reputation testimony is permissible—personal opinion testimony is not admissible. Cases such as *Ward v. State*, 591 S.W.2d 810, 816 (Tex. Cr.App.1980) (Opinion on State's motion for rehearing), and *Smith v. State*, 414 S.W.2d 659, 661 (Tex.Cr.App.1967), perpetuate that proposition.

An examination of the decisions cited in *Ward* and *Smith* will reveal that past failures to distinguish character from reputation, accused from deceased and nature of permissible questions on direct from impeachment on crossexamination probably led to a rejection of proof of a character trait by opinion testimony. For example, in support of its limitation of testimony offered to show good character of an accused, *Smith* cites the ancient case of *Brownlee v. State*, 13 Tex.App. 255 (Ct. App.1882), holding an inquiry as to "general character of the deceased" permitted under predecessor to former article 1258, P.C. 1925, "must be limited to the general

---

1. The questions and answers are set out in full in the opinion of the court of appeals, *id.,* at 12.

2. "[DEFENSE COUNSEL]: At this time we will ask the Court grant a mistrial because of the reputation for being a peaceful and law abiding [sic] citizen has not been put in issue.
　　[THE COURT]: Your request for mistrial will be denied.

[DEFENSE COUNSEL]: Note our exception.
[THE COURT]: *Your objection to this question is overruled."*
For the full exchange see *Moncrief,* supra, at 11. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

reputation of the person." The holding was based primarily on a learned treatise the ·Court was wont to follow in which it was said, " 'Character' ... is to be regarded as convertible with 'reputation.' " Accord: *Watson v. State*, 156 Tex.Cr.R. 585, 244 S.W.2d 515, 516 (1951).

Professor Roy R. Ray strived mightily to set matters straight.

> "It is everywhere agreed that a person's moral character has probative value in determining his probable conduct. An accused may, therefore, introduce evidence of his good character to show that it is improbable that he did the act charged."

Ray, Texas Law of Evidence (Third Edition) § 1492, 2 Texas Practice 169. Also, character (or reputation) may be a fact issue in a given case. *Id.*, at 1501, p. 187ff.

> "It should be kept in mind that ... there are three possible modes of proving character: (1) Personal opinion of witnesses who know the person. (2) Reputation of the person in the community. (3) Conduct of the person from which an inference may be drawn as to his actual disposition."

*Ray*, op cit., § 1491, at 168.[3]

■ When appellant adduced testimony that Joey Deaton and Bill Boutcher had never known him to be "a violent person" or "an aggressive person" he was introducing opinion evidence as to a particular trait of character, and it was before the jury without objection.[4] According to current reasoning what appellant did is acceptable. In that context, then, the prosecution was entitled to rebut the opinion testimony of Deaton and Renfro with testimony of Floyd Wright as to reputation of appellant for being "a peaceful and law-abiding citizen."

Given that analysis, there was no error in overruling appellant's objection to the question put to Wright, and thus the court of appeals reached the right result.

The judgment of the Beaumont Court of Appeals is affirmed.

TEAGUE, Judge, concurring.

We granted the petition for discretionary review that was filed on behalf of Mark Anthony Moncrief, hereinafter referred to as the appellant, in order to determine whether the Beaumont Court of Appeals correctly overruled the appellant's ground of error, to-wit: "The Trial Judge erred in overruling the Appellant's objection to the introduction by the State's attorney during the guilt portion of the trial of evidence that placed in issue the Appellant's reputation in the community in which the Appellant resided for being a peaceful and law abiding citizen before said issue was placed into evidence before the jury by the Appellant." For reasons stated in its opinion, the court of appeals held that the trial judge did not err. *Moncrief v. State*, 690 S.W.2d 10 (Tex.App.—Beaumont 1984). I disagree.

The record reflects that the appellant was tried and convicted by a jury for "intentionally and knowingly caus[ing] the death of an individual, Christopher Carter, by shooting him with a firearm, to-wit: a shotgun." Punishment was assessed by the trial judge at thirty years' confinement in the Department of Corrections.

The evidence reflects that after consuming approximately ⅓ of one-half gallon of Vodka, the appellant shot Carter, the deceased, at point blank range in the back of his body with a shotgun, which caused Carter's death. There does not appear to have been any previous serious difficulties between appellant and Carter that might

---

**3.** New Texas Rules of Criminal Evidence are similar in effect. Rule 404(a)(1) permits an accused to offer and the prosecution to rebut evidence of a pertinent trait of character "for the purpose of proving that he acted in conformity therewith on a particular occasion." Rule 405 provides that a trait of character may be proved by reputation or opinion testimony and, where it is "an essential element of a charge, claim, or defense," by specific instances of conduct.

**4.** That Harold Vechel Renfro agreed his "character [is] good" without being more specific is too ambiguous; in any event the more particular trait had been shown.

have justified appellant firing the fatal shot into Carter's back. The appellant testified, but given the circumstances of the killing his testimony left a lot to be desired to justify his killing Carter. The State's "star" witness was Joe "Joey" Deaton, who testified that soon after the killing the appellant made several incriminatory statements that related to why he killed Carter. Many witnesses who testified for the appellant testified that Deaton's general reputation in the community for being truthful was bad.

On cross-examination, without objection by the prosecuting attorney, Deaton was asked and answered the following questions that were elicited by the appellant's attorney:

Q: You've known Mark [the appellant] all your life, have you not, Joey?

A: I have.

Q: And during that period of time have you ever known Mark Moncrief to be a violent person?

A: No, sir.

Q: Have you ever known Mark Moncrief to ever start any problems with anyone?

A: No, sir.

The record also reflects that Bill Boucher and Harold Vechel Renfro, defense witnesses, testified prior to when the appellant testified.

Without objection by the prosecuting attorney, Boucher testified that he never knew the appellant to be an aggressive person.

Q: Okay. Did you ever know Mark to be an aggressive person?

A: No.

Renfro also testified as follows:

Q: Do you know Mark Moncrief personally?

A: Yes, I do.

Q: Is his character good?

A: Yes.

Because the prosecuting attorney objected, Renfro was not permitted to testify in the jury's presence that he knew the appellant's reputation "for his truth and veraci-

ty." Had he been permitted to so testify, he would have testified that the appellant's reputation in the community in which he lived and resided for having those character traits was good.

For reasons I will state, the testimony that Deaton, Boucher and Renfro gave concerning their personal knowledge of the appellant's character traits for being non-violent, non-aggressive, and having a "good character" in general was subject to several objections. As noted, however, except for objecting to Renfro's testifying to the appellant's general reputation in the community "for his truth and veracity," the prosecuting attorney chose not to level any objection to the above testimony.

Floyd Wright, another defense witness, also testified that Deaton's general reputation for truth and veracity was bad and that he was not entitled to be believed under oath. Although the appellant had not at that time testified, the following occurred during the prosecuting attorney's cross-examination of Wright. This goes to the appellant's complaint that we chose to review.

THE PROSECUTING ATTORNEY: Do you know Mark Moncrief?

A: THE WITNESS WRIGHT: Yes, sir.

Q: Do you know his reputation in the community in which he resides for being a peaceful and law-abiding citizen?

DEFENSE COUNSEL: Objection, Your Honor. At this time I ask the Jury to be removed.

THE COURT: For what purpose?

DEFENSE COUNSEL: To voice an objection.

THE PROSECUTING ATTORNEY: It's not objectionable.

THE COURT: Your request is denied.

DEFENSE COUNSEL: At this time we'd ask the Court grant a mistrial because of the reputation for a peaceful and law abiding has not been put in issue.

THE COURT: Your request for mistrial will be denied.

DEFENSE COUNSEL: Note our exception.

THE COURT: *Your objection to this question is overruled.* (Emphasis added.)

THE WITNESS WRIGHT: Would you repeat it?

THE PROSECUTING ATTORNEY: Do you know his reputation?

THE WITNESS WRIGHT: Yes, sir.

THE PROSECUTING ATTORNEY: Is it good or bad?

THE WITNESS WRIGHT: *As far as being law abiding, probably not. Peaceful, I've never seen the boy cause any trouble.* (Emphasis added.)

The court of appeals held that the error had not been preserved for appellate review. If I understand the court's reasoning why the error was not preserved for appellate review, I find that it was based upon the following: (1) the appellant's objection, "Objection, Your Honor," was too general of an objection to preserve the error, and (2) because appellant's counsel had not obtained a ruling on his objection, his request for a mistrial was premature, i.e., because counsel had not done it by the numbers, he failed to preserve the error for appellate review purposes. For reasons that I will later give, I cannot agree with the court of appeals that the error was not preserved for appellate review.

The record reflects that after the appellant testified, John Muckelroy, a former schoolteacher of his, testified on his behalf. Muckelroy testified that the appellant had a good reputation in the community in which he lived for being a peaceful and law-abiding citizen, as well as having a good reputation for being truthful.

Bobby Baker, another former schoolteacher, also testified that appellant had a good reputation in the community in which he lived for being a peaceful and law-abiding citizen. Baker further testified that appellant could be believed under oath.

"There is no better known rule [of law in this State] than that the reputation of the defendant cannot be inquired into by the State unless the accused himself opens up the way." *Brown v. State,* 605 S.W.2d 572, 574 (Tex.Cr.App.1980). This has been the law of this State at least since 1892. See *Felsenthal v. State,* 30 Tex.App. 675, 18 S.W. 644, 645 (1892). In fact, such rule of law is so well known that "There is probably not a prosecuting attorney in the state who does not know that such a question is improper, and that it is bound to be hurtful when thus improperly brought to the attention of the jury seems plain." *Farar v. State,* 112 Tex.Cr.R. 199, 15 S.W.2d 1050, 1051 (Tex.Cr.App.1929). But cf. *Small v. State,* 634 S.W.2d 698 (Tex.Cr.App.1982). Thus, "It is reversible error for the State to put the reputation of the accused in issue where the defendant has not done so. (Citations omitted.)" *Smith v. State,* 659 S.W.2d 427, 429 (Tex.Cr.App. 1983). Of course, it is error for the defendant's attorney to inject into the case the defendant's general reputation for one or more character traits unless and until the defendant has testified or unless counsel has obtained permission of the court to prematurely offer such testimony. Personal opinion testimony going to one or more of the defendant's character traits is never admissible at the guilt stage of the trial. *Ward v. State,* 591 S.W.2d 810, 816 (Tex. Cr.App.1980) (Opinion on State's motion for rehearing). Nevertheless, the untimely asking of such a question by the prosecuting attorney, over objection, can be reversible error. *Childress v. State,* 92 Tex.Cr.R. 215, 241 S.W. 1029 (1922).[1]

---

1. "Personal opinion" testimony going to one or more of the defendant's character traits is to be distinguished from "general reputation" testimony going to one or more of the defendant's character traits. "General reputation testimony that goes to a particular character trait that a defendant may have in the general community in which he lives is opinion testimony based on hearsay and need not be based on the witness' awareness of specific acts, or on his personal knowledge of the fact of the defendant's arrest for the alleged offense on trial, if the witness testifies that the reputation-character trait is good. (Citations omitted.) If a witness testifies that a defendant has a general reputation for a particular character trait, and testifies that the

Of course, if the accused puts on testimony timely and in an orderly fashion that goes to his general reputation in the community for having one or more relevant and germane good character traits, then that testimony is subject to being impeached by the prosecuting attorney either through proper "have you heard" questions or by proper rebuttal testimony on the subject. 2 Ray, *Texas Practice-Texas Law of Evidence: Civil and Criminal*, Sec. 1492, pp. 169–171 (3rd ed. 1980). Also see *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Johnson v. State*, 633 S.W.2d 888, 891–92 (Tex.Cr.App. 1982); *Ward v. State*, supra; *Brown v. State*, 477 S.W.2d 617, 619–20 (Tex.Cr.App. 1972); McClung, *Lawyer's Handbook for Texas Criminal Practice*, at p. 319 (Rev.ed. 1985).

In this instance, it was not the prosecuting attorney who first injected into evidence the subject of the appellant's "character" traits for being non-aggressive, non-violent, and having a general "good character"; to the contrary, it was the appellant's counsel who first erroneously injected into evidence that subject matter through his questioning of the defense witnesses Boucher and Renfro and his cross-examination of the State's witness Deaton. These questions were improper because mere personal opinion of a witness that goes to a particular character trait of the accused is never admissible evidence at the guilt stage of the trial. See *Ward v. State*, supra. Cf. Art. 37.07, V.A.C.C.P., which governs the punishment stage of a non-capital felony case, and *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967), and its progeny, governing this Court's construction of that statute. Of course, the prosecuting attorney should have timely and properly objected to what were obviously improper questions, but he did not do so.

In rejecting the appellant's ground of error, the court of appeals held that because appellant's counsel had asked the witnesses Boucher and Deaton their personal opinions about the appellant's specific character traits for being non-violent and non-aggressive, he "opened the door" to the prosecuting attorney's asking Wright the complained of question. A majority of this Court agrees. I disagree for the reasons about to be stated.

First, when the prosecuting attorney asked Wright the objected to question that concerned the appellant's reputation in the community in which he resides for being a peaceful and law-abiding person, the appellant had neither testified, put on any general reputation witnesses, converted any of the State's witnesses into general reputation witnesses, nor had he secured permission of the court to prematurely offer this kind of testimony before he testified. The question asked by the prosecuting attorney, at the time it was asked, was clearly improper and should not have been asked.

Second, it is now axiomatic that when a prosecuting attorney asks objectionable questions, but the defendant does not timely and properly object to such questions, and the defendant complains on appeal about the asking of such questions, nothing is usually presented for review on appeal because the defendant waived the error, if any, by failing to object. See, for example,

---

defendant's general reputation for having that trait is good, it is not necessary that the witness be personally acquainted with the defendant in order to speak of the defendant's general reputation which the witness knows, and the reputation of the defendant need not have been discussed by the witness with anyone prior to the date of the alleged offense. (Citation omitted.) However, before a witness can testify that the defendant's general reputation for having a particular character trait is bad, the witness must have actually discussed the matter with someone, and that person must have told the witness that the defendant's general reputation for having that particular character trait was bad." *Jackson v. State*, 628 S.W.2d 446, 450, fn. 2 (Tex.Cr.App.1982). A "personal opinion character" witness, on the other hand, is one who professes only to personally know one or more of the defendant's specific character traits. However, it is not proper to prove the character of the defendant or any other witness by evidence of personal opinion or specific acts. *Ward v. State*, supra, at page 818. Also see *Brown v. State*, 605 S.W.2d 572, 574 (Tex.Cr. App.1980); *Wrenn v. State*, 597 S.W.2d 369, 372, fn. 1 (Tex.Cr.App.1980); *White v. State*, 590 S.W.2d 936, 937 (Tex.Cr.App.1979).

*Lejeune v. State,* 538 S.W.2d 775, 780 (Tex. Cr.App.1976). Several years ago, Judge Leon Douglas, a former member of this Court, in authoring this Court's opinion of *Robinson v. State,* 548 S.W.2d 63, 66 (Tex. Cr.App.1977), stated therein the following: "A good rule of evidence works both ways." I wholeheartedly subscribe to such statement. Just as a defense attorney should not be permitted to lie behind the log by failing to timely and properly object, and later attempt to take advantage of a helpless prosecuting attorney, I believe the same rule should apply to prosecuting attorneys. Therefore, a prosecuting attorney is not entitled to lie behind the log by not objecting to what is obviously an objectionable question and then later claim under the guise of rebuttal or proper cross-examination that the asking of the unobjected to question "opened the door" to the asking of improper questions or the obtaining of inadmissible testimony. Cf. *Nixon v. State,* 653 S.W.2d 443, 444 (Tex.Cr.App. 1983) ("The State did not object to this testimony; but 'When such improper evidence is admitted, the State may not under the guise of rebuttal present additional improper evidence' ") Having made no objections to the appellant's counsel's improper questioning of Deaton Boucher, and Renfro, the prosecuting attorney is foreclosed by such non-action from claiming that such improper questioning "opened the door" to additional improper questions and the obtaining of inadmissible testimony. E.g., *Crocker v. State,* 573 S.W.2d 190, 205 (Tex. Cr.App.1978); *Lejeune v. State,* supra; *Thomas v. State,* 530 S.W.2d 834 (Tex.Cr. App.1975). In this instance, had the prosecuting attorney timely and properly objected to the appellant's attorney's improper questions, because the law is so clearly written, I am confident that the learned trial judge would have promptly sustained the objections and instructed the jury to disregard them. Had this occurred, this would have prevented the improper testimony from Boucher, Deaton, and Renfro getting before the jury. E.g., *Rich v. State,* 510 S.W.2d 596, 596–7 (Tex.Cr.App. 1974).

Third, the rule of "opening the door" is inapplicable to this cause. Such rule of law, as applicable to an accused, only comes into play when the accused through proper direct examination of a witness, including himself, brings out only such parts as may be favorable to himself. When this occurs, it is then the right of the opposing party to put before the trier of facts, either through proper cross-examination or proper rebuttal testimony, the full details respecting the matters within the scope of proper direct examination. For example, if the accused or his witness through testimony leaves a false impression with the trier of fact, the opposing party may clear this up through proper cross-examination or proper rebuttal testimony. However, the rule of law was not meant to be subverted into a rule of law that would permit a prosecuting attorney to lie behind the log, so to speak, by failing to make a timely and proper objection, and through such non-action later ensare a helpless defendant. See, e.g., *United States v. Lum,* 466 F.Supp. 328, 224 (U.S.D.C., D.Delaware 1979); *United States v. Winston,* 145 U.S. App. 67, 71, 447 F.2d 1236, 1240 (D.C.1971).

Without more in the record, the prosecuting attorney, by asking Wright the objectionable question, would have run afoul of the rule that "It is reversible error for the State to put the reputation of the accused in issue where the defendant has not done so." *Smith v. State,* supra.

The record, however, reflects that after the appellant testified, his counsel presented testimony from defense witnesses Muckelroy and Baker that the appellant had a good reputation in the community in which the appellant lived or resided for having a peaceful and law-abiding reputation, as well as having a good reputation for being truthful, and that such reputation would entitle the appellant to be believed under oath. This kind of testimony was permissible because an accused is entitled to advance one or more of his character traits as evidence that might go to his innocence of the crime he stands charged with committing. Of course, if an accused does present

such testimony, his proof is confined to evidence of his reputation in the community for those traits. His presentation, in terms of number of such traits, may be as narrow or as broad as he chooses so long as it remains germane to issues on trial. Good character evidence may of itself generate a reasonable doubt as to guilt, but in Texas the accused is not entitled to have the jury so instructed. *Gilderbloom v. State*, 272 S.W.2d 106, 109 (Tex.Cr.App. 1954). Also see *Heard v. State*, 9 Tex.App. 1 (1890).

The question thus becomes whether under the doctrine of curative admissibility the appellant, through counsel, cured the error that the prosecuting attorney committed when he, the prosecuting attorney, injected into the case, before the appellant put into evidence his reputation traits in the community in which he resided for being a peaceful and law-abiding citizen, those character traits.

"Generally speaking, the evidentiary doctrine of curative admissibility is a rule of law that is ordinarily used by appellate courts when it first finds that the trial court erred by admitting into evidence over proper and timely objection certain evidence or testimony that should not have been admitted into evidence, but because it also finds that the defendant thereafter presented the same kind of evidence or testimony to which he had previously objected, the error is deemed to have been waived or cured by the defendant." (Citations omitted) *Sweeten v. State*, 693 S.W.2d 454, 456 (Tex.Cr.App.1985) (On State's motion for rehearing.)

An exception to this broad general rule is that *if evidence has been unlawfully obtained*, and admitted into evidence over proper and timely objection, and the accused thereafter puts on evidence or testimony only to rebut, destroy, or explain the effect of the illegally obtained evidence or testimony, then in that instance he does not waive the error by putting on evidence or introducing testimony. *Sweeten v. State*, supra. The question in that instance is not whether the accused made a knowing deci-

sion to testify or to put on such evidence or testimony, but why. "If he did so in order to overcome the impact of [the illegally obtained evidence that was improperly introduced], the testimony is tainted by the same illegality that rendered the [evidence or testimony] inadmissible." *Sweeten v. State*, supra, at 459.

In this cause, Wright's testimony that the appellant had a bad reputation in the community in which he lived for being "law-abiding" was not illegally obtained testimony, but, instead, was inadmissible testimony. However, when the appellant later put on testimony that he had a good reputation in the community in which he lived for being "peaceful and law-abiding", such became subject to rebuttal testimony by the prosecution. Cf. *Thomas v. State*, 572 S.W.2d 507, 512 (Tex.Cr.App.1978). I would hold that the appellant cured the prosecuting attorney's error by later putting on testimony that he had a good reputation for being a peaceful and law abiding person in the community in which he lived, which then became subject to rebuttal testimony.

The court of appeals' holding that the appellant "opened the door" to such testimony was actually dictum because it originally found that the appellant had failed to preserve the error because his objection was insufficient and further held that it was incumbent upon the appellant, notwithstanding that he had received an adverse ruling, to again object or request the court to instruct the jury to disregard Wright's answer.

It is generally true that before error of a prosecuting attorney asking an improper question can be said to be preserved for appellate review, the defendant must make a timely and specific objection to the objectionable question. Manifestly, this is because the trial judge must be fairly advised of the legal grounds in support of the objection before he can intelligently rule upon it. The defendant must then press his specific objection to the point of obtaining an adverse ruling. If the objection is overruled, an adverse ruling is immediately ob-

tained. If the objection is sustained, the defendant should then pursue the following method in order to obtain an adverse ruling: (1) request that the jury be instructed to disregard the question; (2) obtain a ruling on the request; and (4) then request a mistrial. *Koller v. State,* 518 S.W.2d 373, 375, fn. 2 (Tex.Cr.App.1975). Of course, there are exceptions to these broad general rules.

One such exception is that if the question itself is so obviously harmful that an instruction to the jury would not cure its harmful effects, i.e., the mere asking of the question itself can be reversible error, then in that instance it is not necessary to perfect the error by going through the above general procedures. See *Mounts v. State,* 148 Tex.Cr.R. 149, 185 S.W.2d 731 (Tex.Cr. App.1945). That exception is inapplicable to this case because the appellant does not rely upon the doctrine that the question itself was so erroneous as to be incurable by an instruction.

An exception to the general rule that a specific objection must be made by the defendant exists when it is obvious to the trial judge and the opposing party why the defendant is objecting. In that instance, a general objection may be sufficient to preserve error for appellate review purposes. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App.1977).

Given the colloquy that took place after the prosecuting attorney asked Wright the objectionable question, I envisage a trio of interlocutors all speaking at once, during which none subscribed to the above general procedures. Nevertheless, the colloquy makes it clear that the trial judge and, in particular, the prosecuting attorney understood why the appellant's attorney was complaining about the question that the prosecuting attorney asked Wright. In this instance, under *Zillender v. State,* su-

pra, the appellant's general objection was sufficient.

Because the trial judge during the colloquy denied the motion for mistrial but then went on to expressly overrule the appellant's general objection, it would have been rather futile for appellant's counsel to have then asked the trial judge to instruct the jury to disregard the improper question that the prosecuting attorney had asked Wright. Given the nature of the objection and the colloquy that ensued, I would hold that the appellant preserved for appellate review his contention that the prosecuting attorney erred in asking Wright the objectionable question. I would also hold that when the appellant, through counsel, later put on testimony that he had a good reputation in the community in which he lived for being a peaceful and law abiding person, this caused the prosecuting attorney's earlier improper question and Wright's inadmissible testimony to become retrospectively laundered, thus curing whatever error might have previously existed.[2]

For the above reasons, I only concur in the result the majority opinion reaches.

**2.** I acknowledge that the majority opinion adopts the views of Professor Roy R. Ray, the eminent authority on Texas evidence, who is still very active on the campus of Southern Methodist University School of Law. In light of this Court's recent propensity to overrule any law that has existed for more than 100 years, I

suspect that Professor Ray will not raise a toast to the majority opinion for adopting his views, but, instead, will toast the fact that he is only 84 years young and has not yet reached the 100 year mark, which, by some of this Court's recent decisions, can be devastating.