HOMER B. ADAMS V. STATE.

No. 24492. November 23, 1949.
Rehearing Denied January 11, 1950.
Request for Leave to File Second Motion for Rehearing and Recalling Mandate
Denied (Without Written Opinion) January 18, 1950.
Supplemental Opinion On Motion for Rehearing Filed April 26, 1950.
Writ of Certiorari Denied by Supreme Court of United
States May 7, 1951.

Hon. W. W. McCrory, Judge Presiding.

*Bell, Dyche and Bell,* of Houston (on appeal only), and *Joe Burkett,* of San Antonio, for appellant.

*William N. Hensley,* Criminal District Attorney, and *M. C. Gonzales,* Assistant Criminal District Attorney, San Antonio, and *George P. Blackburn,* State's Attorney, Austin, for the state.

*Joel W. Cook, William H. Scott, Raymond H. Wilson, Melvin S. Cohn* and *Charles M. Rawson,* all of Houston, *amici curiae.*

KRUEGER, Judge.

Appellant was convicted of the offense of theft of personal property over the value of fifty dollars, and his punishment was assessed at confinement in the state penitentiary for a term of three years.

The indictment in this case contained two counts, the first

of which charged appellant with the theft of a check of the value of $4,236. The second count charged theft by appellant as bailee of said check. The court submitted the case to the jury on the first count in the indictment. The jury found him guilty, as charged therein, and assessed his punishment as above stated.

At the conclusion of all the testimony, appellant requested the court to instruct the jury to return a verdict of not guilty. The court declined to give such instruction and appellant excepted. In order to determine whether or not appellant was entitled to such an instruction, we must look to the evidence adduced by the state which, briefly stated, shows that on or about the 25th day of March, 1946, appellant entered into a contract with Mr. and Mrs. C. L. Bowie to build them a dwelling house according to plans and specifications delivered to him. The consideration for the construction of said building was $12,236 to be paid by Mr. Bowie as follows: $4,236 as a cash down payment and the balance in installments of $2,000 at specified dates as the construction of the building progressed. The last installment was to be paid when the building was completed. On the morning following the night on which the contract was made and before Mr. Bowie had paid or delivered to appellant a check in the sum of $4,236, a report was made over the radio that all building materials had been frozen by the government. After hearing this report, Mr. Bowie became apprehensive that appellant might not be able to obtain the necessary materials; however, appellant assured him that he had ample materials on hand to complete the building. With that assurance by appellant, Mr. Bowie, on March 26, 1946, delivered to appellant's attorney a check in said sum of $4,236, payable to Homer B. Adams & Sons, and this check was by said attorney deposited in the First National Bank of Commerce at San Antonio, Texas, to the credit of appellant and sons. Appellant did not build the house nor did he return any of the money to Mr. Bowie which he had received on the check, nor did he testify in his own behalf on his trial. He contends that he was entitled to a peremptory instruction to the jury to acquit him based on the ground that the check was obtained on the promise to perform something in the future. We are not in accord with his contention because before Mr. Bowie delivered to him the check in question, appellant assured him that he had on hand all material necessary to construct the building, which was a statement of an existing fact, when in fact he had only a few concrete blocks out on the lot and no lumber whatever. At least the evidence fails to show

that he had any lumber. He also made misrepresentations as to his financial ability to comply with the terms of the contract.

Bills of Exception Nos. 1, 3 and 4 may be considered and disposed of together since they relate to the same matter complained of in each bill. These bills show that appellant requested three special charges which are to the effect that if the jury believed from the evidence that a priority or freeze order had been issued by the C.P.A., O.P.A., or any other government agency after the contract had been made between Bowie and Adams and Sons, and that this was the cause of the failure to build the house for Bowie, or if they had a reasonable doubt thereof, to acquit appellant. We are of the opinion that under the facts of this case he was not entitled to such an instruction since there is not any evidence from any source that the freeze order had anything to do with the failure of appellant to use the material which he claimed he had on hand to construct the building. Moreover, the freeze order had been promulgated before the contract had been finally consumated. On the 26th day of March, the appellant, the injured party, and their respective attorneys discussed the freeze order at which time appellant assured the injured party that he had all of the necessary materials except a small amount of plumbing fixtures for the construction of the building. We therefore overrule each of the bills.

By Bill of Exceptions No. 2 he complains because the trial court declined to give his specially requested charge to the effect that since the state had elected to rely for a conviction on the first count of the indictment, they should acquit him on the second count. We see no error reflected by the bill.

Bills of Exception Nos. 5, 6, 7 and 8 are deficient in that they fail to show that the remarks of the district attorney were not provoked or invited by the argument of counsel for defendant. Without such a showing the bills do not reflect any error See Richardson v. State, 99 Tex. Cr. R. 514, 270 S.W. 854; Sanchez v. State, 147 Tex. Cr. R. 436, 181 S.W. 2d 87; and cases there cited.

Bill of Exceptions No. 9 is also deficient, in this, that while the state's witness, C. L. Bowie, was being cross examined by appellant's attorney he was asked the following question, to-wit: "Then you authorized Mr. West to give Mr. Evans written authorization to turn the check over to Mr. Adams?" To which the witness replied, "After it was understood that the money was to be used strictly for that particular purpose." The answer

naturally implied that the witness answered "Yes" and agreed with the appellant, then he explained his answer; thereupon, appellant objected and stated, "We object to that. That is not responsive to the question. The authorization shows that there are no restrictions on it." The bill fails to show on what ground he objected other than that the reply was not in response to the question. We think the answer shows that the witness agreed with the appellant to the extent that he authorized Mr. West to turn over the check to Mr. Adams and then the witness followed his answer with an explanation of why he did so. The witness had a right to explain why he did so. If we are correct in believing that the witness' answer included the answer "Yes" and we think that it does, then that part of the answer was certainly responsive to the question. Hence the blanket objection to the whole of the answer would be insufficient since it failed to separate the objectionable part from the unobjectionable part and specifically address his objection to the objectional part thereof. See Parks v. State, 108 Tex. Cr. R. 576, 2 S.W. 2d 245. Furthermore, there was testimony from other sources which was of like character as that herein objected to. In the case of Young v. State, 89 Tex. Cr. R. 230, 230 S.W. 414, this court made the following statement: "However, since the objection is to the whole of such occurrence as detailed, it would seem clear that if any part thereof would make more apparent the truth of the matters charged against appellant, it would be admissible." It is not every unresponsive answer that should be stricken. It is only when the unresponsive answer is also inadmissible. An unresponsive answer which is competent and makes more apparent the truth of the matters charged against appellant would be admissible, notwithstanding its unresponsiveness. In support of the opinion here expressed, we quote from Underhill on Evidence, 4th Ed., page 766, as follows: "Where the question calls for a 'Yes' or 'No' answer, a witness can explain his answer." Wigmore on Evidence, 3rd Ed., Vol. 3, states the rule to be that where a witness goes beyond the scope of the question, and makes an answer not responsive, there is nothing per se wrong. If the answer includes irrelevant facts, it may be stricken. However, if it furnishes relevant facts, then it is nevertheless admissible even though it was not specifically asked for. To the same effect is the doctrine announced by McCormick and Ray on Evidence, page 357; Webber, et ux v. Park Auto Transportation Co., et al, 47 A.L.R. 590.

Bill of Exceptions No. 10 shows that while A. S. West was being cross examined by appellant's attorney the following ques-

tion was propounded to him: "Going back to the morning of the 26th day of March. Was there anything said in that conversation in Mr. Adams' presence about interim financing or anything of that character?" To which the witness replied, "No, Mr. Adams said that he could finance the thing himself, and in addition stated at the request of Mr. Bowie that this money that was going to be paid would be used for nothing else except this construction." The defendant objected thereto on the ground that the contract speaks for itself and the supplemental contract was signed by A. S. West attorney for C. L. Bowie, and O. S. Evans, attorney for the defendant, after the defendant had left. What we have said in disposing of Bill of Exceptions No. 9 applies equally and with full force to this bill. For the reasons there stated we overrule appellant's contention.

Appellant contends that the check was dated March 26, 1946, and the indictment charged that it was unlawfully and fraudulently taken from the possession of C. L. Bowie on or about the 25th day of March, 1946. Appellant takes the position that since the check was not in existence on the 25th day of March, he could not have obtained the same from Mr. Bowie. We do not think there is any merit in his contention. The fact that the indictment charged he unlawfully and fraudulently obtained the check on or about the 25th day of March would authorize the admission of proof at any time about that date. See Branch's Ann. P. C., page 229, Sec. 433.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Mr. and Mrs. C. L. Bowie were desirous of building a house on certain lots in San Antonio. They came in contact with appellant and submitted to him certain plans and specifications. The parties finally agreed on such plans and the amount to be paid by the Bowies for a completed "turnkey" job according to such plans. The Bowies were to immediately make an initial payment of $4,236.00 on the contract price, and Mr. Adams agreed to build such house according to the plans, other payments to be made later on. The check for $4236.00 was not made out or signed on the date of the signing of the contract, but was made

out and signed on the following day. Before such check was delivered, it was heard over the radio that the government had frozen all building materials, and the Bowies, as well as appellant, entered into further negotiations relative to such contract in the light of such order. A supplemental contract thereto was then entered into and became a part of the original contract, same reading as follows:

"ADAMS AND SONS
General Contractors
520 Frost Bldg.   Garfield 7174
San Antonio, Texas.

"Mr. and Mrs. C. L. Bowie,
144 Hammond Avenue,
San Antonio, Texas.

"Dear Mr. and Mrs. Bowie:
    "Referring to a certain contract which Adams and Sons, General Contractors of San Antonio, Texas, have with you to build a house in San Antonio, Texas, we propose to carry out the contract exactly as stated therein except that in case giverment priorities or other restrictions should prevent the carrying out of the contract we will submit to you all of the invoices of materials actually incorporated into the job and charge you for same, but we will stand the cost of labor and will return to you within thirty days all moneys advanced by you to us, less the cost of said materials. (The 30 day period to begin the day work is stopped due to government priority or restriction.)

"ADAMS AND SONS
By O. E. Evans

Attorney for
Adams and Sons

"ACCEPTED:

"C. L. Bowie and Mrs. C. L. Bowie
By: A. S. West,
        Attorney for
        C. L. Bowie and Mrs. C. L. Bowie

"O. Shelley Evans, our attorney is hereby authorized to sign for us in any way he sees fit in all matters pertaining to this particular contract.

"Signed 'Adams and Sons
By Homer B. Adams.' "

After the receipt by and acceptance of this supplemental contract by Mr. and Mrs. Bowie, a check was prepared and signed by Mr. Bowie for $4236.00 and was taken by appellant's agent to the bank and deposited in the appellant's account, and he immediately began to draw upon the same. The state's testimony shows that soon thereafter some persons dug a trench about thirty feet long, and left six or seven concrete blocks on the Bowie lot; and nothing further was done on the land where the house was to be built until about three weeks later when $630.00 worth of tile was found on the lot. Later on this tile was hauled away and the trench alone was left thereon.

The state's indictment herein is a charge of theft by false pretext. It was proven by the state that appellant agreed to build the Bowies a house according to specifications, and that he told them that he had on a certain tract on Fey Avenue in San Antonio the material with which such house was to be built; that the cost to the Bowies of said house was to be $12,-236.00; that there was to be paid to appellant the sum of $4236.00 prior to the beginning of such work, other payments to be later made; and that if such work was stopped by reason of a freezing order on material by the government, any unexpended money for material was to be returned to the Bowies within thirty days after such contract was agreed to and accepted by both parties. Mr. Bowie caused his check for $4236.00 to be delivered and same was deposited to appellant's account. The state showed that appellant did not have in his possession sufficient material to build such house; that he was not stopped by any government order; and that he did not build said house. He took this money and appropriated the same to his own use and benefit, and Mr. Bowie received nothing therefor.

The state has shown to the satisfaction of the jury that at the time the contracts were entered into and the check received that appellant's statement relative to the possession of materials was false, and that same was a pretext to obtain possession of the amount of money from Bowie. We think both the original and supplemental contract entered into the negotiations and became one contract; that any and all representations made therein relative to either the original contract or its supplement were the basis of such agreement. The statement relative to the possession of material was found to be false by the jury.

Relative to the court's charge, the appellant requested, as shown in Bills Nos. 1, 2, 3, and 4, certain charges upon the fact

that if appellant was rendered unable to carry out his contract with the Bowies because of a government order, freezing and prohibiting the further use of building materials, then he should be acquitted herein. These charges should not have been given. There is no testimony that such government order caused any inability to carry out this contract, but instead, the jury evidently believed that appellant told the Bowies that he already had sufficient material on the ground for the purpose. Again, if such an order from the government had been used and same prohibited the further building, then the contract provided for a return of the unused portion of this fund thus paid to him, as shown by the supplemental contract above set forth. No money has ever been returned to Mr. Bowie, and no house has ever been built; and appellant could not rely upon but a portion of such contract and discard the remainder thereof on the same subject.

We see no merit in Bills Nos. 9 and 10; nor do we see any fundamental error in the allegation and proof in regard to the check in question being dated March 26, 1946, and the allegation of March 25, 1946.

We adhere to the views expressed in the original opinion herein, and the motion will therefore be overruled.

#### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Upon original hearing an opinion was entered affirming the judgment of the trial court. Thereafter, and on January 11, 1950, appellant's motion for rehearing was overruled.

Subsequent to the issuance of mandate on the 13th day of January, 1950, the attention of this court was called to an irregularity in the judgment, hereinafter set out. On April 12, 1950, an order was entered recalling the mandate for further consideration of appellant's motion for rehearing. This court has jurisdiction of all matters in the record and in pursuance thereof, now supplement our opinion on appellant's motion for rehearing.

This cause was heard by a jury who returned into court the following verdict: "We, the jury find the defendant guilty—first count thereof—as charged in the indictment and assess his punishment at confinement in the penitentiary for a term of three (3) years."

Upon receiving this verdict it became mandatory on the part of the court to enter judgment accordingly. This he did, in confusing language however, as follows: "It is therefore considered, ordered and adjudged by the Court that the defendant Homer Adams, is guilty of the offense of theft and theft by bailee, to which he has pleaded not guilty, and that he be punished, as has been determined by the jury, at confinement in the State Penitentiary for a term of not less than two nor more than three years."

The phrase "for a term of not less than two nor more than three years" was not authorized by the jury's verdict and, while the same may be construed as a matter of law in cases where the judgment contains a jury's verdict, it is nevertheless confusing and it has long been the practice of this court to reform such judgments when called to our attention.

It further appears from the record that an error was made in copying the jury's verdict into the judgment in that the phrase "the first count thereof" was omitted. It should have been so entered as to show that the jury found the defendant guilty of theft instead of "theft and theft by bailee," as recited in the judgment.

Our purpose in recalling the mandate was to consider the matter of the correction of the judgment during the present term of court, in order that no further confusion may require additional procedure. It is, therefore, ordered that the judgment of the trial court be and the same is hereby reformed so as to eliminate the words "not less than two nor more than" also "and theft by bailee"; and add thereto, at the proper place, "first count thereof" as contained in the verdict. The paragraph of the judgment above quoted shall read as follows: "It is therefore considered, ordered and adjudged by the Court that the defendant Homer Adams is guilty of the offense of felony theft, to which he has pleaded not guilty, and that he be punished, as has been determined by the jury, by confinement in the State Penitentiary for a term of three (3) years."

The sentence is likewise ordered reformed by eliminating the words "theft by bailee" so as to show that appellant has been adjudged to be guilty of felony theft.

Appellant's motion for rehearing is overruled and the clerk will now issue a new mandate in terms of law.