Spence Leon SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00690–CR.

Court of Appeals of Texas, Dallas.

Nov. 16, 1988.

Rehearing Denied Dec. 29, 1988.

Bruce Anton, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

LAGARDE, Justice.

Following a plea of not guilty, appellant was convicted by a jury of aggravated assault and assessed a punishment of six years' confinement and a $5,000 fine.

Appellant asserts three points of error; namely, (1) that there is a fatal variance between the name of the complainant as alleged in the indictment (*Richad* Morrell) and the evidence adduced at trial (*Richard* Morrell) and that the variance is not *idem sonans;* (2) that the trial court erred in allowing the prosecutor to impeach an eyewitness with "have you heard" questions involving appellant's alleged prior arrests; and (3) that the trial court erred in allowing a reputation witness to testify at the punishment phase of the trial without requiring disclosure of the identity of persons with whom he had talked about appellant's reputation. We agree with appellant's second point; consequently, we reverse and remand.

Two Dallas police officers saw appellant sitting outside the door of an apartment they had under surveillance for the purpose of detecting narcotics trafficking. Suspicious that appellant was a lookout, the officers approached him and, as they got closer, appellant hit an alarm bell, pulled a pistol from his belt and pointed it at one of the officers as appellant ran. As appellant did so, he slipped and fell, dropping the gun. Appellant was then arrested and charged with aggravated assault. At trial, appellant testified that he got the pistol from a woman who lived upstairs for the purpose of returning it to another woman, and that as he was leaving, he saw the police, dropped the gun and ran.

In his first point of error, appellant asserts that there is a fatal variance between the indictment and proof at trial. The indictment alleged *Richad* Morrell as the complaining witness; at trial, the complainant testified that his name was *Richard* Morrell. The trial court overruled appellant's motions for an instructed verdict based on this ground.

Inasmuch as this point of error, in essence, is a sufficiency point, it is necessary to address it in order to decide whether a proper disposition of this case is a remand for retrial or a remand with instructions to acquit. *See Fulmer v. State*, 731 S.W.2d 943, 946 (Tex.Crim.App.1987); *Polk v. State*, 704 S.W.2d 929, 935 (Tex.App.—Dallas 1986), *aff'd*, 738 S.W.2d 274 (Tex.Crim. App.1987); *see* TEX.R.APP.P. 90(a).

 Appellant asserts that the variance here does not come within the rule of *idem sonans*. Under the rule of *idem sonans*, absolute accuracy in spelling a name is not required. The use of a name is merely to designate the person intended, and that object is fully accomplished when the name given has the same sound as his true name. *Loven v. State*, 145 Tex.Crim. 260, 261, 167 S.W.2d 515, 516 (1943). If the name as spelled, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accepted method, a sound practically identical to the correct name as commonly pronounced, the name given is a sufficient identification of the individual referred to, and no advantage can be taken of the clerical error. *Dingler v. State*, 705 S.W.2d 144, 145 (Tex.Crim.App.1984); *Polk*, 704 S.W.2d at 935. A variance, to be material, must mislead a party to his prejudice. *Raven v. State*, 149 Tex.Crim. 294, 294, 193 S.W.2d 527, 527 (1946).

When a slight variance in spelling results in a totally different name, the variance has been found fatal. *See, e.g., Escobar v. State*, 578 S.W.2d 139, 140 (Tex.Crim.App. 1979) (Daniel and Don). In addition to *Escobar*, appellant relies on *Reynolds v. State*, 58 Tex.Crim. 273, 124 S.W. 931, 931–32 (1910) (Rose and Liz); *Grant v. State*, 568 S.W.2d 353, 354 (Tex.Crim.App.1978) (Mary and Marion); *Fulmer*, 731 S.W.2d at 946 (Dan and Donald). Here, the variance is not between two names, but rather is a misspelling of Richard.

Appellant relies on the following evidence in support of his position that a fatal variance exists:

Q (By defense counsel) Is that your first name, Officer (indicating)?

A No, not with that spelling.

Q Can you pronounce that for us. Would you say Richad or Richard? Would you pronounce this for us.

A Richard.

Q Would you say that these two names are different?

A The spelling would be different, yes.

Q You say this is Richad; you say this is Richard. The pronunciation would be different?

A Yes.

Although the record is unclear, we note that the only pronunciation by the witness was *Richard*. Counsel, in his question, apparently pronounced *Richad* and the witness agreed that counsel's pronunciation was different. There is no evidence, however, before this court that counsel was pronouncing the name as it would commonly be pronounced, or that the two names

were patently incapable of being sounded the same. *See Fulmer,* 731 S.W.2d at 946. Further, we note that this exchange took place outside the presence of the jury and the record does not reflect that it was ever redeveloped before the jury. The trial court did not charge the jury on *idem sonans,* nor does the record reflect a request by the defendant to present the issue to the jury, nor an objection to the court's charge for the court's failure to submit the issue.

 If, before a jury, a fact issue requiring the application of the rule of *idem sonans* is raised by the testimony, the court, at the request of the defendant, should instruct the jury to resolve the issue. *Martin v. State,* 541 S.W.2d 605, 608 (Tex.Crim.App.1976). Questions involving the rule of *idem sonans* must be raised in the first instance at trial. If the issue is raised for the first time on appeal, it will be treated as having been waived and will present nothing for review. *Id.* Here, although not raised before the jury, the issue was raised before the court outside the presence of the jury and again as a basis for a motion for instructed verdict. *See Gayton v. State,* 732 S.W.2d 724, 726 (Tex. App.—Corpus Christi 1987, pet. ref'd). However, the Court of Criminal Appeals in *Martin,* after observing that appellate courts are rarely in a position to make a truly informed determination of whether two names could be or were pronounced to sound the same, further stated:

> We conclude that the resolution of questions involving the rule of *idem sonans* should be limited primarily to the trier of the facts. A trial judge or jury, having heard the pronunciation of the names in question by the parties involved, is in the better position to determine whether or not the names are or can be sounded the same; ... we will therefore refrain from disturbing on appeal a jury or trial court determination that names in question are *idem sonans* unless evidence shows that the names are patently incapable of being sounded the same or that the accused was misled to his prejudice.

*Martin,* 541 S.W.2d at 607–08 (emphasis supplied). Inasmuch as there is no evidence before this Court that the two names are patently incapable of being sounded the same, or that the accused was misled to his prejudice, we conclude that the variance in spelling is not fatal. We overrule appellant's first point of error.

In his second point of error, appellant contends that the trial court erred in permitting the State to impeach an eyewitness with "have you heard" questions concerning appellant's alleged prior arrests. The defense called Alfred Jenkins as an eyewitness to the offense. On direct examination, Jenkins testified that he saw appellant drop the pistol as appellant ran past him, with the officers in close pursuit. On cross-examination, the State questioned Jenkins about where he parked his car that night, how long he had observed appellant, the descriptions of the officers, and Jenkins's ability to remember the events of that evening after the passage of many months. On cross-examination by the State, the following exchange occurred:

Q Do you know the defendant in this case, Spencer Leon Smith?

A Yes, ma'am. I've been knowing him for about a whole year. <u>I have never known him to be in any kind of trouble.</u>

MR. ANTON: Don't give any nonresponsive answers and don't say—

THE COURT: Just make your objection, Counsel.

MR. ANTON: I'm sorry. I object to nonresponsive answer.

THE COURT: I believe this is your witness. This is Cross Examination, so go ahead.

Q (By Ms. Little) Mr. Jenkins, have you heard—

MR. ANTON: We object to this, Your Honor. I'd ask that the jury be retired.

Appellant asserts that the underlined portion of the above testimony was clearly nonresponsive and uninvited by the de-

fense. *See Gremmel v. State*, 169 Tex. Crim. 508, 510, 335 S.W.2d 614, 616 (1960). Appellant further argues that the appellant's prior arrests were inadmissible as impeachment evidence under Rule 609 of the Texas Rules of Criminal Evidence. The State, on the other hand, while acknowledging that the underlined portion of Jenkins's answer was nonresponsive, nevertheless argues that the answer came into evidence through appellant's witness, injected evidence favorable to the appellant and, therefore, subjected appellant to consequences of the testimony. In other words, the State argues that Jenkins's answer opened up the "have you heard" questions later asked by the State. We must decide, therefore, whether appellant's objection was timely and specific enough to apprise the trial court of his complaint; whether the trial court erred in overruling appellant's "nonresponsive" objection and whether the trial court erred in allowing the "have you heard" questions and, if so, whether the error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2).

■ The general rule has sometimes been stated that the objection that an answer is nonresponsive is unavailable to the party adverse to the examiner, if the evidence elicited is admissible. *See Adams v. State*, 156 Tex.Crim. 63, 66, 225 S.W.2d 568, 570 (1950); *accord* 24 Tex.Jur.3d *Criminal Law* § 3286 ("nonresponsive" objection unavailable to party adverse to the examiner if the evidence elicited is admissible). Inherent in whether evidence is improperly allowed before a jury is the element of whether a proper and timely objection is lodged against that evidence. If no objection is lodged, the inadmissibility of the evidence is thereby waived and the admission of the evidence is proper. Consequently, an objection by the adverse party on the grounds of "nonresponsiveness" should result in the exclusion of evidence only if the objection timely and specifically directs the trial court's attention to why, beyond its nonresponsiveness, the evidence is inadmissible.

■ By its very nature, an objection based on nonresponsiveness comes after a response has been made. Therefore, the availability of an objection based on nonresponsiveness is an exception to the general rule that in order to be timely an objection must be made before a question is answered. *See Rodriguez v. State*, 577 S.W.2d 491, 493 (Tex.Crim.App.1979). When a question does not fairly apprise an adverse party that an objectionable answer will result, an objection by the adverse party based on nonresponsiveness will not be considered untimely if made after the question has been asked and answered. *Id.*

■ Not every unresponsive answer should be stricken. It is only when the unresponsive answer is also inadmissible that it should be stricken. An unresponsive answer which is competent and makes more apparent the truth of the matters charged against appellant is admissible notwithstanding its unresponsiveness. *Adams*, 225 S.W.2d at 570. Further, it is within the discretion of the trial court to permit a witness for the State or for the accused to explain his testimony. Thus, when a question calls for a "yes" or "no" answer, the witness can explain his answer. If the explanation furnishes relevant facts, even though unresponsive, the answer is nevertheless admissible. *Id.* A "nonresponsive" objection alone, however, merely informs the trial court why the objection was not made prior to the answer being given. Even after the "nonresponsive" portion of the objection is made, there remains the question of the testimony's admissibility. In this context, in order to properly exclude evidence or obtain an instruction to disregard, a party must address in its objection both the *nonresponsiveness and the inadmissibility* of the answer. *Id.* Further, a blanket "nonresponsive" objection alone is an insufficient objection to preserve error where the response is a hybrid answer—that is, where a portion of the answer is objectionable and a portion of the answer is not objectionable. In *Adams* the Court of

Criminal Appeals stated: "Hence the blanket objection to the whole of the answer would be insufficient since it failed to separate the objectionable part from the unobjectionable part and specifically address . . . the objectional part thereof." *Id.*

▇▇ In this case, the defendant's original objection in front of the jury was a blanket "nonresponsive" objection to the whole of the answer, as described in *Adams,* part of which was objectionable and part of which was not; and it was incomplete in that it only addressed the nonresponsiveness of the answer, rather than addressing both the *nonresponsiveness* and the *inadmissibility* of the answer. Furthermore, the trial court never actually ruled on the original objection. *See* TEX.R.APP.P. 52(a). However, the record reflects that after the jury was excused, defense counsel elaborated upon his original objection. This elaboration occurred before additional questions were asked, and the objection was, therefore, timely. We must, then, consider the following portion of the record developed outside the jury's presence:

> DEFENSE COUNSEL: Your Honor, this witness made nonresponsive answer to a question that was not asked, and volunteered information. It was not proper before the jury and I move the Court timely to sustain it, to remove it from the jury's consideration.
>
> Now, she's going to use this effort to ask him have-you-heard questions about prior arrests, impeaching a witness on something I didn't bring up; had no intentions of bringing to trial, in an effort to prejudice the jury about arrests not resulting in convictions against my client. I'd ask the jury to disregard that.
>
> I've instructed the witnesses not to do that, and I think that all that's going to happen is that it's going to—she's going to bring in some prejudicial and inflammatory efforts in an attempt to impeach this witness about something that's not proper and is a nonresponsive answer.
>
> THE COURT: I'll overrule your objection. I don't know what she's getting ready to do.

The prosecutor then proceeded to tell the court what she intended to do, which was to present "have-you-heard" questions, just as defense counsel anticipated. Defense counsel thereafter objected to each "have you heard" question.

Certainly the rambling and inartful form of the objection here is to be discouraged. Nevertheless, because defense counsel stated as the ground of his objection that the nonresponsive answer unfairly opened the door to the defendant's character, and thereby allowed for improper impeachment, we conclude that, in substance, it can fairly be said to be an objection specifically directed to that portion of the answer where the witness stated he had never known the defendant to have been in any trouble before. Read as a whole, the substance of the objection is that a specifically identified portion of the answer was objectionable because it was not only *nonresponsive* but was also *inadmissible* because the issue of the defendant's character had not been opened up. *See Adams,* 225 S.W.2d at 570. We conclude, therefore, that the trial court erred in not striking that portion of the witness's answer.

▇▇ Appellant may introduce testimony concerning his peaceable and law-abiding character as proof that it is unlikely that he committed the offense for which he is on trial. *Moncrief v. State,* 707 S.W.2d 630, 632 (Tex.Crim.App.1986); *see* TEX.R. CRIM.EVID. 404(a)(1). Rule 405(a) of the Texas Rules of Criminal Evidence states:

> (a) Reputation or opinion. In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. Provided however that in order to be competent to testify concerning the character or trait of character of the accused, a witness must, prior to the date of the offense, have been substantially familiar with the reputation of the accused. In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

Once appellant introduces evidence of his good character, the State is entitled to re-

but the same. TEX.R.CRIM.EVID. 404(a)(1).

 It is axiomatic that where the accused places his reputation in issue, through the testimony of a witness, the witness can be impeached on cross-examination with "have you heard" questions. *Rutledge v. State,* 749 S.W.2d 50, 52 (Tex. Crim.App.1988), *citing Johnson v. State,* 633 S.W.2d 888, 891–92 (Tex.Crim.App. 1982); *see generally* 2 R. Ray TEXAS PRACTICE—TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL, § 1492 (3d ed. 1980). The court in *Rutledge* goes on to explain that the rationale for the rule is that reputation is an opinion based on hearsay and that "have you heard" questions are properly utilized to impeach a witness who claims a familiarity with hearsay as to the defendant's reputation. *Id.* at 52–53. The court in *Rutledge* further points out that when a witness simply testifies to his personal knowledge of the defendant's character, such a witness cannot be impeached with "have you heard" questions. *Id.* Further, the State may not, on cross-examination, transform appellant's fact witness into a character witness in order to impeach with otherwise admissible "have you heard" questions. *Els v. State,* 525 S.W.2d 11, 14 (Tex.Crim.App.1975); *see also Hatley v. State,* 533 S.W.2d 27, 29 (Tex.Crim.App.1976) (State may not rely on its own questioning as an invitation to rebuttal).

 Clearly the State would not have been permitted to ask a question which would have responsively elicited the answer "I have never known [appellant] to be in any kind of trouble," because the defense had not opened up the issue of the defendant's reputation and the State had nothing to rebut. Therefore, that portion of the answer was both nonresponsive and inadmissible. Unlike *Els,* 525 S.W.2d at 14, here the State did not actively transform the defense fact witness into a character witness but, rather, it was Jenkins's vol-

unteered response on which the State relies as opening the door to the "have you heard" questions. The issue then becomes whether the defense witness's volunteered response opened up the "have you heard" questions. For the following reasons, we conclude that it did not. The record shows that defense counsel stated that he had instructed the witness not to volunteer information, and, after the witness did volunteer the statement, defense counsel tried to "shut the door" by requesting that the answer be stricken. Further, the witness's nonresponsive answer simply stated his personal knowledge and was not predicated on his familiarity with hearsay as to the defendant's reputation. *Rutledge,* 749 S.W.2d at 53.

We conclude that, in substance, the objection, read as a whole, was sufficiently specific to fully apprise the trial court of both the nonresponsive portion of the answer to which defense counsel was objecting, as well as the grounds of inadmissibility—that is, that the issue of defendant's character had not been opened up. We hold, therefore, that the trial court erred in overruling the objection and allowing the extensive prior arrest record of appellant. *See Els,* 525 S.W.2d at 14.

 Having held that the objection was improperly overruled and the "have you heard" questions improperly allowed, we must reverse appellant's conviction unless we can determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *See* TEX.R.APP.P. 81(b)(2). The witness was asked if he had heard of the following arrests of defendant: a 1981 arrest in New Jersey for possession of marijuana[1] and for the possession with intent to deliver; a 1985 arrest in New York for burglary and illegal entry and criminal possession of marijuana; a February 1986 arrest in Dallas for violation of the Controlled Substances Act; an April 1986 arrest in Dallas for violation of the Controlled Substances

---

1. The record reflects that a second question was asked about a 1981 arrest for marijuana where the defendant received probation. It is unclear if this is the same 1981 arrest.

Act and an August 1986 arrest in Dallas for violation of the Controlled Substances Act and evading arrest. All of the "have you heard" questions involved prior arrests; final convictions resulting from these arrests, if any, were never later introduced during the course of the trial. *See* TEX.R.CRIM.EVID. 609(a). Because we cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment, we sustain appellant's second point of error.

 In point of error three, appellant asserts that the trial court erred in allowing a reputation witness to testify at the punishment phase without requiring the witness to reveal the identity of persons with whom he had talked about appellant's reputation. Relying on *Plante v. State,* 674 S.W.2d 368, 376 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 692 S.W.2d 487, 495 (Tex.Crim.App.1985), appellant argues that he is entitled to know the basis of the reputation evidence in order to test the knowledge of the witness, and that disallowance of the identification evidence is harmful error. The State, on the other hand, asserts that this issue has been decided adversely to appellant by the Court of Criminal Appeals in *Butler v. State,* 640 S.W.2d 612, 614 (Tex.Crim.App.1982). We agree with the State.

In *Plante,* appellant alleged that a member of the District Attorney's office was an improper reputation witness because her only knowledge about appellant came from taking hot check complaints. 674 S.W.2d at 376. Citing *Stephens v. State,* 522 S.W.2d 924 (Tex.Crim.App.1975), this Court disagreed. Identity of the numerous persons whom the witness had heard refer to appellant as a "crook or criminal" was not the issue. *Plante,* therefore, offers appellant no support.

In *Butler,* a police officer was not disqualified as a reputation witness because he claimed the informer privilege when asked to disclose the name of persons with whom he had discussed the defendant's reputation. In a well-reasoned opinion by Justice Clinton, the Court stated:

> If a reputation witness need not be able to name particular persons in the community with whom he discussed the reputation of an accused for his testimony to be admissible, it follows that the peace officer who knows their names need not disclose them in order to qualify himself to say what general opinion is commonly held in the community with respect [to] appellant's reputation. The test of trustworthiness of purported reputation is the extent to which it is generally understood in the community, not reliability of one or more members of the community discussing it with a peace officer.

*Butler,* 640 S.W.2d at 614 (footnote omitted). We overrule appellant's third point of error.

REVERSED and REMANDED for a new trial.

## OPINION ON MOTION FOR REHEARING

In its Motion for Rehearing, the State reasserts that appellant's objection was insufficient to preserve error and, further, that even if the objection were sufficient, it was not error to overrule the objection. For the reasons stated in our original opinion, and the additional reasons expressed herein, we disagree. We hold that the substance of the objection was sufficient to preserve error, and that the trial court erred in overruling the objection.

Apparently the State bases its position that, even if the objection were proper and timely, it was not error to overrule the objection, on its premise that Jenkins testified to his *opinion* of Smith's character pursuant to rule 405(a).[1] In its brief, the State asserts:

> Even if the trial court had understood appellant's objection to be on the proper

1. TEX.R.CRIM.EVID. 405(a) (effective September 1, 1986). Unless otherwise indicated, all further rule references are to the Texas Rules of Criminal Evidence.

grounds, it was not error to overrule it. Clearly, defense counsel in the present case was surprised by his witness' answer and was not responsible for the witness' *opinion* being placed before the jury. Just as clearly, however, the witness made the statement because he wanted to help out the appellant and thought a statement of his *opinion* would do so. Because the witness deliberately placed appellant's character in issue, the State should have been allowed to challenge his *opinion* with "have-you-heard" questions about appellant's prior arrests.

[Emphasis added].

The State next challenges the applicability of *Rutledge v. State*, 749 S.W.2d 50 (Tex.Crim.App.1988). We do not disagree with the State that ostensibly [2] rule 405(a) changes prior law; however, we disagree that any change effected by rule 405(a) renders the rationale of *Rutledge* inapplicable to the specific facts of this case.[3]

We recognize that *Rutledge* involved a 1984 conviction and applies pre-rule 405(a) law. However, we disagree with the State's apparent position that the applicability of a case is to be determined by a specific calendar date as opposed to the logic of its rationale as applied to the specific facts at bar. For the reasons that follow, we conclude that the rationale of *Rutledge* is applicable to the facts here.

The factual record before us reflects: (1) that Jenkins was a fact witness called at the guilt-innocence stage, not a character or reputation witness called at the punishment stage; (2) that Jenkins testified based on his personal *knowledge*, not based on his *opinion* of Smith's character or reputation, as the State seems to assert; and (3) that there was no predicate establishing substantial familiarity with Smith's reputation either before the date of the offense,

as required by rule 405(a), or, for that matter, after the date of the offense. Our application of *Rutledge* here, however, should not be read to mean that *Rutledge* would necessarily apply to a case where personal *opinion*, properly predicated on a substantial familiarity with the *reputation* of the accused prior to the date of the offense, as required by rule 405(a), is expressed by a witness under circumstances which otherwise would open up rebuttal evidence by the State. We emphasize that our application of *Rutledge* is limited to the specific facts of this case.

For all the above reasons, we overrule the State's motion for rehearing, and reverse the trial court's judgment and remand this case for a new trial.

---

**2.** It is noted, however, that rule 405(a)'s "substantial familiarity" requirement provides that a character witness is only competent to express a personal opinion concerning the accused's character when it is based upon *reputation*.

**3.** We do not contend here that *Rutledge* would be applicable to all factual records, but limit its application to the specific facts of this case.