

# NUMBER 13-17-00152-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MIGUEL GONZALEZ MEJIA,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

---

### On appeal from the 430th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellant Miguel Gonzalez Mejia appeals from judgments convicting him on three counts of aggravated sexual assault of a child, all of which are first-degree felonies, and sentencing him to terms of confinement for ten and twenty years, to run concurrently with each other, and fifteen years, to run consecutively with the twenty-year sentence. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West, Westlaw through 2017 1st C.S.). In one

issue, which we construe as encompassing five sub-issues, Mejia contends that his trial counsel provided ineffective assistance by failing to object to testimony from various witnesses that: (1) called for a witness to voice an opinion about his guilt; (2) called for hearsay; (3) was irrelevant; and (4) was not for the purpose of medical diagnosis. In Mejia's fifth sub-issue, he contends that his trial counsel failed to object when the State referenced its belief in his guilt during its closing argument. We affirm.[1]

## I. BACKGROUND

On the evening of Saturday, November 7, 2015, M.G., a seven-year old girl, got out of bed and told her mother, J.G., that she needed to go to the bathroom. Through the open bathroom door, J.G. noticed M.G. applying Vicks ointment to her genital area. When J.G. asked M.G. if she was okay, M.G. threw the jar of Vicks to the floor, and said "Mike," which is the name M.G. called Mejia by; M.G. looked scared, according to J.G. At the time, J.G. was in a romantic relationship with Miguel Mejia Jr., Mejia's son, whom M.G. referred to as "Mikey."[2]

At trial, M.G. testified that she applied the ointment to her "private part," as referred to by the State, because it hurt. M.G. recounted that her private part hurt because Mejia

---

[1] Appellant filed a motion for rehearing. *See* TEX. R. APP. P. 49.1. On original submission, we respectfully declined to characterize appellant's claim of ineffective assistance of counsel, premised on ten arguments, as multifarious. Instead, we grouped appellant's complaints in light of existing law. On rehearing, appellant complains that we did not address each and every one of his arguments. We respectfully disagree. After due consideration, we withdraw our previous memorandum opinion and judgment and substitute the following memorandum opinion and accompanying judgment. Appellant's motion for rehearing is denied.

[2] We will refer to appellant Miguel Gonzales Mejia as "Mejia" and his son, Miguel Mejia Jr., as "Mikey."

put his hands underneath M.G.'s underwear and touched her private part. M.G. also recounted that Mejia, "more than one time," had both touched with his hand and put his private part inside of M.G.'s "private part, the one in the back to go to the bathroom," as referred to by the State. On one occasion, Mejia put his private part in M.G.'s mouth. On other occasions, Mejia kissed M.G.'s mouth, feet, and "private part on the chest." M.G. had not told anyone about Mejia's conduct towards her until her November 7, 2015 conversation with J.G. because Mejia told her "we would get into trouble."

J.G. testified that up until November 2015, she and Mikey had been in a romantic relationship for approximately four and a half years and that the couple had a son together during that time. Although Mikey was not M.G.'s father, she and Mikey had a father-daughter relationship. For a time, J.G., M.G., Mikey, and the couple's infant son resided with Mejia and his wife. After J.G. and her family moved into an apartment of their own, they would visit Mejia's home on the weekends for family gatherings.

Upon hearing M.G.'s account of Mejia's contact with her, J.G. called the Hidalgo County Sheriff's Office. The responding deputy advised J.G. to take M.G. to her physician for an examination. The office staff at M.G.'s physician advised J.G. to take her to the hospital, and thereafter began M.G.'s interaction with three medical or mental health professionals. Lorie Guerrero, a sexual assault nurse examiner (SANE nurse) at McAllen Medical Center, examined M.G. and found her to not be in distress nor in need of immediate medical treatment. Guerrero interviewed M.G. and documented M.G.'s statements in a written report. Later, M.G. was also interviewed by Gabriella Fitch, a

3

forensic interviewer at the Children's Advocacy Center of Hidalgo County (Estrella's House). Fitch's interview with M.G. was videotaped. Thirdly, Sandra Soliz, a licensed professional counselor, provided counseling services to M.G.

Noe Salazar, an investigator with the Crimes Against Children Unit at the Hidalgo County Sheriff's Office, recounted his investigative efforts. Salazar interviewed J.G., Mikey, Mejia's wife, and Mejia's other son. Salazar watched the videotape of Fitch's interview with M.G. and reviewed the reports prepared by Fitch and Guerrero. The State elicited from Salazar that M.G.'s recollection of the contact Mejia had with her was consistent with what M.G. had relayed to J.G., Guerrero, Fitch, and Soliz. The State also elicited from Salazar that the statements provided to him by Mejia's family members allowed him to believe that M.G. would spend extended periods of time at Mejia's home.

The jury found Mejia guilty on three counts of aggravated sexual assault of a child, *id*., and it assessed Mejia's punishment as terms of confinement for ten, twenty, and fifteen years. The trial court signed three judgments in conformity with the jury's verdict and assessment of punishment.[3] This appeal followed.

## II. DISCUSSION

In Mejia's sole issue, he contends that his trial counsel provided ineffective assistance by failing to object to testimony that: (1) called for Salazar, Fitch, and J.G. to

---

[3] There are three separate judgments of conviction in this case for each count. *See Morales v. State,* 974 S.W.2d 191, 192 (Tex. App.—San Antonio 1998, no pet.) (explaining that multiple convictions arising from a single proceeding may be memorialized in separate judgments); *see also Sandoval v. State*, No. 08-11-00283-CR, 2013 WL 5873296, at *16 (Tex. App.—El Paso Oct. 30, 2013, pet. ref'd) (mem. op., not designated for publication) (same).

4

voice an opinion about his guilt; (2) called for hearsay from Salazar, Fitch, and J.G.; (3) called for irrelevant material from Fitch; and (4) was not for the purpose of medical diagnosis from Soliz.

## A.    General Authority and Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions.   U.S. CONST. amend. VI; *DeLeon v. State*, 322 S.W.3d 375, 380 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).   In order to demonstrate ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.   *Strickland v. Washington*, 466 U.S. 668, 689 (1984).   The court evaluates the counsel's performance by an objective standard.   *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009).   We give great deference to counsel's performance and begin with the assumption that counsel's conduct fell within the wide range of reasonable professional assistance.   *Strickland*, 466 U.S. at 689; *Lane*, 303 S.W.3d at 707.   Counsel's assistance prejudices the defense when there is a reasonable probability, sufficient to undermine confidence in the outcome that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 668; *Lane*, 303 S.W.3d at 707.   This two-pronged test is "the benchmark for judging . . . whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."   *Strickland*, 466 U.S. at 686; *see Lane*, 303 S.W.3d at 707.

5

**B.      Testimony Regarding Belief of Mejia's Guilt**

In Mejia's first sub-issue, he contends that his trial counsel was ineffective for failing to object to the testimony of Salazar, Fitch, and J.G. regarding their belief in Mejia's guilt.   The expression of guilt or innocence in any case is a conclusion to be reached by the jury based upon the instructions given them in the court's charge, coupled with the evidence admitted by the judge through the course of the trial.   *DeLeon*, 322 S.W.3d at 383 (citing *Taylor v. State*, 774 S.W.2d 31, 34 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd)).   No witness is competent to voice an opinion as to guilt or innocence.   *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974).

In *DeLeon*, 322 S.W.3d at 380, which Mejia references, a jury found the appellant guilty of indecency with a child by sexual contact.   On appeal, the appellant complained that his trial counsel was ineffective for failing to object to the testimony of a police detective that provided the following:

> Q.      And in this case, based upon your investigation, did you determine where the indecency offense had occurred?
>
> A.      Yes. The last offense occurred at . . . the suspect's home.   It's in Bryan, Brazos County.
>
> Q.      Who, based upon your investigation, was the suspect or the person who committed this indecent contact with [complainant]?
>
> A.      Jose DeLeon.

*Id*. at 383.   The Fourteenth Court of Appeals held that the prosecutor's questioning was improper.   *Id*.   It noted that the prosecutor not only asked the detective who he developed as a suspect during the course of the investigation, he also asked who

6

committed the offenses and where the last offense occurred.   *Id*.

**1.    Salazar**

Mejia complains that his trial counsel failed to object to the following examination of Salazar by the State:

Q.    Okay.   What did you base your investigation on?

A.    The consistency of the outcry that she made at the Children's Advocacy Center and the nurse and by the witnesses that I spoke to.

. . .

Q.    No.   Okay.   So looking at those two events, both the forensic exam and the CAC interview, was the child consistent in her outcry?

A.    Yes, she was consistent.

Q.    Okay.   Was that information consistent with the information you would have received from the other witnesses?

A.    Yes.

Q.    Specifically, from the mother in this case?

A.    Yes, correct.

Q.    And you said you also interviewed [Mikey]; is that correct?

A.    That's correct.

Q.    Was that information consistent with the testimony he provided to you?

Mejia's Counsel:    Your Honor, I'm going to object to this line of questioning.   First of all, leading and also, Judge, all of this has been asked and answered yesterday.

Court:    Okay.   The objection to leading is sustained. Rephrase.

7

| | |
|---|---|
| State: | Thank you. |
| Q. By State: | At any point, did you receive any information that was not consistent with the child's outcry? |
| A. | No. |
| Q. | Okay. At any point, did you interview or have occasion to visit with someone who offered mitigating information or something that would prove the defendant's innocence? |
| A. | No. |

The State's questioning of Salazar and his answers are distinguishable from the portion of *DeLeon*, 322 S.W.3d at 380, that Mejia references because the State does not ask for an opinion or conclusion regarding guilt. Therefore, *DeLeon* does not dictate that we must find error in trial counsel's failure to object. Additionally, we cannot conclude that trial counsel's failure to object to the State's question referring to the reports of Fitch and Guerrero overcomes the presumption of reasonable trial strategy. *See generally, Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance."). Salazar was the third witness to testify at trial, after J.G. and M.G. Trial counsel may have concluded that a successful objection could have prompted the State to ask more probing questions of Fitch and Guerrero. *See id*.

**2. Fitch**

Mejia complains that trial counsel failed to object to questions posed by the State

8

to Fitch that left the impression that M.G. was truthful to Fitch during her forensic interview. During the State's direct examination of Fitch, she testified that she neither asked M.G. leading questions nor suggested or introduced any information to M.G. Fitch also testified that M.G. understood that she was not allowed to guess at any answers, but could only talk about what she actually knew and actually remembered. As for truthfulness, the State asked and Fitch answered the following:

Q.    All right. Ms. Fitch, I want to go back to the rules of the interview. Do you provide any kind of an oath, or get the child to give a promise regarding the truth?

A.    Yes.

Q.    Okay. What is that oath, or—or promise you ask them to make?

A.    So we go over the definition of a truth and a lie, just to make sure that I can get an oath or they can tell the difference. Consequences. What happens if someone tells a lie or if someone tells the truth. And I'll ask them if they promise to talk to me only about the truth that day.

Q.    Okay. Did you do that in this case?

A.    Yes.

Q.    Okay. To best of your knowledge, did the child understand that truth, lie oath?

Mejia's Counsel:    Objection, hearsay and calls for speculation.

Court:    Did she understand, is your question?

State:    To the best of the interviewer's knowledge, did the child understand the oath.

Court:    She may answer, if she knows.

9

A. I do not proceed with the interview if the child doesn't promise.

The right to effective assistance of counsel does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (en banc). Trial counsel objected to Fitch's testimony regarding M.G.'s truthfulness on hearsay and speculation grounds. We cannot say that trial counsel's performance was deficient solely because she did not articulate the specific basis that Mejia now raises on appeal.

**3. J.G.**

Mejia complains that trial counsel failed to adequately preserve error in J.G.'s testimony regarding M.G.'s truthfulness. During the State's direct examination of J.G., it asked and she answered the following:

Q. Okay. Ma'am, what did you do when your daughter said, "It's because of Mike"?

A. I asked her, "What do you mean? What's happening"? She told me, "It's because of Mike." And then she paused for two or three seconds just looking at me and then she told me, "If I tell you, it's because he's going to get in trouble."

Q. How did that make you feel, [J.G.], at that point?

A. Normally, she's not somebody who lies.

Mejia's Counsel: Objection, nonresponsive.

Court: Sustained.

On appeal, Mejia complains that trial counsel did not preserve error by pursuing the objection to an adverse ruling. The question by the State did not overtly call for the

answer M.G. provided. Had trial counsel pursued her objection to M.G.'s statement, the trial court would have given the jury a curative instruction. *See, e.g., Jackson v. State*, 889 S.W.2d 615, 617 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (providing that in order to properly exclude evidence or obtain an instruction to disregard a nonresponsive answer, a party must object to the nonresponsiveness and inadmissibility of the answer) (citing *Smith v. State*, 763 S.W.2d 836, 841 (Tex. App.—Dallas 1988, pet. ref'd)). Reasonable trial strategy may have persuaded trial counsel to forgo such an objection and the risk of highlighting the testimony. *See Bone*, 77 S.W.3d at 833; *see also Perez v. State*, No. 13-17-00239-CR, 2018 WL 3301911, at *3 (Tex. App.—Corpus Christi Jul. 5, 2018, no pet.) (mem. op., not designated for publication).

## C. Hearsay

In Mejia's second sub-issue, he contends that his trial counsel was ineffective for failing to object to hearsay testimony from Salazar, Fitch, and J.G. As for Salazar, Mejia complains that the State elicited from him, without objection by trial counsel, M.G.'s statements to Guerrero, Fitch, and J.G. regarding Mejia's sexual contact with her. Mejia also complains that trial counsel failed to object to Salazar's recollection of statements made to him by Mejia's wife and son. As for Fitch and J.G., Mejia complains that trial counsel failed to object to their testimony of M.G.'s statements regarding Mejia's sexual contact with them. According to Mejia, such testimony was improper and trial counsel's performance was deficient because the trial court declared Guerrero as the only outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through 2017

11

1st C.S.).

We cannot say that trial counsel's performance vis-a-vis Mejia's hearsay complaints overcomes the presumption of reasonable trial strategy. *See Bone*, 77 S.W.3d at 833. At the outset of the State's direct examination of J.G., the first witness at trial, she recalled her conversation with M.G. on the evening of November 7, 2015 as follows:

Q. And at that point is when you say she looked scared?

A. Yes.

Q. What did [M.G.] say to you when you asked her what was going on?

A. (Speaking Spanish; not translated.)

Mejia's Counsel:   Objection, hearsay.

Court:            Overruled. Overruled.

Prosecutor:       Thank you, Judge.

Q. What did she say? She threw the Vicks, I'm sorry, and then what?

A. I asked her what happened and she threw the jar of Vicks and then all she said was Mike, and that's when she looked scared.

Read in isolation, the trial court abused its discretion in overruling trial counsel's hearsay objection. *See* TEX. R. EVID. 801(d) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."); *see also Saavedra v. State*, 297 S.W.3d 342, 349 (Tex. Crim. App. 2009) (providing that we review a trial court's decision to admit evidence over a hearsay objection for an abuse of

12

discretion).

Nevertheless, trial counsel may have reasonably concluded that similar hearsay objections regarding the remainder of J.G.'s testimony and the testimony of Salazar and Fitch would be similarly overruled. Reasonable trial strategy may have dictated to trial counsel that it would be advantageous to forgo such objections rather than risk the jury suspecting that Mejia was trying to hide something behind objections that in trial counsel's estimation would be overruled.

## D. Irrelevant

In Mejia's third sub-issue, he contends that his trial counsel was ineffective for failing to object to all of Fitch's testimony as irrelevant. According to Mejia, the State called Fitch because Salazar had watched her interview and it wanted "to shore up Salazar's conclusions about the case." To be "relevant," evidence must be material and probative. TEX. R. EVID. 401. On this record and in light of Mejia's broad appellate complaint, we cannot say that trial counsel was deficient in not objecting on relevancy grounds to all of Fitch's testimony. Fitch testified as to M.G.'s demeanor in the weeks after the alleged incident as being "[a] little hesitant to speak." Trial counsel may have viewed an objection on this particular piece of Fitch's testimony as futile. *See Yatalese v. State*, 991 S.W.2d 509, 511 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that evidence of a complainant's changed demeanor is relevant in a sexual assault case to show that the offense occurred).

## E. Medical Diagnosis

13

In Mejia's fourth sub-issue, he generally complains that trial counsel was ineffective for not pursuing hearsay objections to Soliz's testimony related to her diagnosis of sexual abuse and belief as to the identity of Mejia as the perpetrator. At the outset of the State's direct examination of Soliz, trial counsel objected to Soliz's qualifications to render a medical diagnosis as follows:

Q.      Okay.  When you received that initial referral, what kinds of—what were the chief complaints when you're talking about symptoms?

A.      Mom reported that her grades were dropping.

Mejia's Counsel:      Objecting, hearsay.

State:      Without saying—I'm sorry.

Court:      Sustained.

State:      I'll rephrase. Judge, if I may respond to the hearsay objection?

Court:      Yes.

State:      This witness is a licensed professional counselor, Judge.  She met with the victim and the statements provided to her, were given to her for the purposes of medical diagnosis, not hearsay.

Court:      Okay.

Mejia's Counsel:      She's not a doctor, Judge.

Court:      For medical diagnosis?

State:      Right, Judge, for medical diagnosis or treatment.  It's not a requirement that the individual or both the witness be a doctor.

Mejia's Counsel:      Judge, she's not—she's not making a medical

14

|          |                                                                                                        |
|----------|--------------------------------------------------------------------------------------------------------|
|          | diagnosis for this child.   She's apparently giving them counseling, I think, but this exception doesn't apply to her. |
| Court:   | The objection is sustained.   Let's go on to something else. |
| State:   | Judge, if I may respond.   Statements made for the purposes of medical diagnosis— |
| Court:   | But is it a medical diagnosis?   Is she a physician? |
| State:   | It's medical diagnosis or treatment, Judge, and she is capable of giving a diagnosis under her professional certifications. |
| Court:   | She's qualified to give a medical diagnosis? |
| State:   | She gives a psychiatric evaluation under the DSM-5, Judge. |
| Court:   | Develop that and ask her those questions. |

Trial counsel then took Soliz on voir dire examination and renewed her objection to Soliz's qualification to testify as a medical professional.   *See* TEX. R. EVID. 803(4) (providing that a statement is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness if the statement is made for—and is reasonably pertinent to—medical diagnosis or treatment and describes medical history; past or present symptoms or sensations; their inception; or their general cause).   The trial court overruled trial counsel's objection.

On appeal, Mejia contends that trial counsel's rule 803(4) objection was insufficient and that she should have pursued additional objections.   However, given the trial court's ruling on trial counsel's rule 803(4) objection, reasonable trial strategy may have

15

persuaded trial counsel to forgo further objections on topics that M.G. had already testified to and the risk of highlighting the testimony. *See Bone*, 77 S.W.3d at 833; *see also Perez*, 2018 WL 3301911, at *3.

## F.     State's Closing Argument

In Mejia's fifth sub-issue, he complains that trial counsel was ineffective for failing to object to the State's closing argument wherein the prosecutor expressed her belief in M.G.'s allegations.   Specifically, Mejia complains about the following in the State's closing argument:

> If you believe the defense's theory that she lied about all of this, that means that she would have had to fooled [sic] an investigator who [has] investigated over 500 sex assault cases.   A SANE nurse with over 29 years['] experience, a certified forensic interviewer who has conducted over 1,000 interviews and a Special's Crimes Unit of the District Attorney's Office, she would have had to fool all of us.   They're asking you to believe not only that she's a liar, but that she's an exceptional liar.   Exceptional liar. Is that what you get when you look at [M.G.]?   That she's capable of being an exceptional liar and fooling all of those people, all of these seasoned investigators, interviewers, nurses, prosecutors?   And if she was such an exceptional liar, why not make up a better lie, if she's that good, that good that she can fool all of us?

Immediately after this argument, the State proceeded to argue:

> Why not make up a better lie?   Why not say it was full blown sex? Why not say it was happening in a particular room, different from the one that she told us?   Why not say that he threatened her?   If we're going to go there, let's make it really salacious.   Let's say he put his arms around her neck, that he threatened her, that he threatened to kill her, her mom, her family.

> If she's capable of being that good of a liar, let's make the story just a little more juicer [sic].   And if she is that good of a liar, why would [M.G.] tell us that he only dropped his pants to a certain length and bring in other people like . . . and say that they were around?   Did she already know what

16

they were going to come in to this courtroom and say? Why would she say that? [M.G.] has told the truth regardless of whether the truth hurts or helps the defendant. She has been honest the entire time for 14 months.

Finally, Gabbie Fitch, Gabriella Fitch, the certified forensic interviewer. With over 1,000 interviews of experience. She was the person entrusted with interviewing this child. Not Investigator Salazar, not Deputy Jayson Rivera and certainly, not mom. She told you all about her experience and why these interviews are done a certain way. They're video and audio recorded. The investigator is listening. It's a live feed.

But more importantly, she has asked [M.G.] to take an oath and she makes sure that she understands that oath and before she can even continue, she has to get this child to promise to do what? I promise to only talk about the truth. And for the next hour, [M.G.] recanted—excuse me, recounted—

Mejia's Counsel:    Objection, Your Honor. She's arguing outside the record.

Court:              Objection is overruled.

Before the aforementioned argument, trial counsel made the following closing argument:

What else is important? And remember, she didn't say he barely broke the plane, you know, the lips. She said, "He put his pee-pee in my mouth, in," Okay. "Was there any taste to it?" "No." "Did it smell like anything?" "No." Why not? Why can't she tell us that? Okay. Because there was no smell. There was no taste or because it didn't happened. It didn't happen. It didn't happen.

Trial counsel eventually objected to the State's closing argument. We cannot say that trial counsel's decision to wait and lodge the objection that she did was unreasonable. Reasonable trial strategy may have persuaded trial counsel to forgo an earlier objection in light of trial counsel's own closing argument. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) ("[P]roper jury argument generally falls within one of four

17

general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement."); *Bone*, 77 S.W.3d at 833; *see also Perez*, 2018 WL 3301911, at *3.

## G. Prejudice

Even if we concluded that trial counsel was deficient, we cannot say that trial counsel's deficiency prejudiced Mejia's defense. *See Strickland*, 466 U.S. at 689. The jury heard directly from M.G., and her testimony alone is sufficient to support Mejia's conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West, Westlaw through 2017 1st C.S.).

Mejia's sole issue is overruled

### III. CONCLUSION

We affirm the judgments of the trial court.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of December, 2018.

18